Fred TARPLEY, Sr., Appellant,

v.

Raymond J. GREENE, et al.

No. 81–1246.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 26, 1982.

Decided July 2, 1982.

As amended July 2, 1982.

Gary E. Bair, Washington, D. C., with whom Arthur B. Spitzer and Elizabeth Symonds, Washington, D. C., were on the brief, for appellant.

Brien A. Roche, Fairfax, Va., for appellees, Montgomery County, DiGrazia and Booth.

David R. Lasso, Arlington, Va., with whom Charles G. Flinn, Arlington, Va., was on the brief, for appellees, Arlington County, et al.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellees, District of Columbia, et al.

Before BAZELON, Senior Circuit Judge, and EDWARDS and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Appellant Fred Tarpley, Sr. was the subject of a 1978 criminal investigation by the police departments of the District of Columbia, Arlington County, Virginia and Montgomery County, Maryland. Appellant brought this suit against the three local governments, their chiefs of police and individual police officers based on several incidents during the investigation in which police officers interrogated appellant and searched him and his home. Appellant sought injunctive relief and damages under 42 U.S.C. § 1983 (1976) ("section 1983") and directly under the Constitution for alleged violations of his Fourth and Fourteenth Amendment rights. His complaint also included several pendent state tort claims.

In a series of rulings the District Court dismissed Tarpley's claims against certain defendants and granted summary judgment

to the rest. Based on our review of the record and the District Court's reasoning, we affirm all of the District Court's rulings except for its grant of summary judgment to District of Columbia police officer Greene and Montgomery County police officer Booth regarding their search of appellant's home on June 9, 1978. We reverse and remand this ruling because we find that the District Court used an erroneous legal standard for determining whether the officers' execution of the search warrant on that date was "reasonable" under the Fourth Amendment.

## I. PROCEEDINGS BELOW

### A. *The Complaint*

On July 6, 1978, appellant filed this suit seeking damages and injunctive relief under 42 U.S.C. § 1983 (1976)[1] and directly under the Constitution for violation of his Fourth and Fourteenth Amendment rights.[2] His complaint also included pendent state claims of common law trespass, assault and battery, destruction and conversion of property, false arrest and false imprisonment. *See* R.E. 34–39.[3] The suit was based on four separate encounters with the police that took place over a two-week period in 1978. Only two of the incidents are relevant to this appeal.

The first incident occurred on May 25, 1978, when Detective Robert H. Carrig, of the Arlington County police department, and Detective Raymond J. Greene, of the District of Columbia police department, interrogated appellant at his home. The complaint alleged that the officers entered appellant's home without a warrant or consent and unlawfully detained, interrogated, and verbally abused appellant despite his requests that they leave. Complaint, ¶ 11; R.E. 35–36. The second incident involved a search of appellant's home by District of Columbia Detective Greene,[4] Montgomery County police officer Jack Booth, and several other Montgomery County police officers. The search occurred on June 9, 1978, pursuant to a warrant issued by Judge Bruce Mencher of the District of Columbia Superior Court. The complaint alleged that, in executing the search warrant, the officers destroyed property, removed items from appellant's home and detained and assaulted appellant. Complaint, ¶ 15; R.E. 36.[5]

1. At the time Tarpley filed suit, § 1983 provided:

   > Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

   42 U.S.C. § 1983 (1976). In 1979, Congress amended § 1983 to cover acts committed under color of District of Columbia law. *See* note 11 *infra*.

2. The Supreme Court first recognized such an implied cause of action in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in which it held that an individual could bring suit directly under the Constitution to recover damages from federal officials who had violated his Fourth Amendment rights.

3. "R.E." refers to the "Record Excerpts" filed by appellant with this court.

4. Although the complaint itself does not allege that Detective Greene was involved in the June 9, 1978 incident, *see* Complaint, ¶ 15; R.E. 36, the record makes it apparent that he was involved, *see, e.g.*, Montgomery County R.E. 16, 25. Appellees have not disputed Greene's involvement in the June 9 incident. *See* Brief for District of Columbia at 5.

5. The other two incidents, which are not involved in this appeal, occurred on May 30, 1978, when Arlington County police officers stopped appellant at gunpoint on a highway in Arlington and interrogated and searched him without a warrant, and on June 2, 1978, when Arlington and District of Columbia police officers searched appellant's home pursuant to a warrant. The District Court dismissed all claims concerning the May 30, 1978 incident on the ground of improper venue. *See* Record, Entry No. 33. The court granted summary judgment to all of the Arlington County and District of Columbia defendants with regard to all claims based on the June 2, 1978 incident on the ground of collateral estoppel. (Appellant had unsuccessfully challenged the legality of this search in previous criminal litigation.) *See* R.E. 19–21, 30. Appellant does not challenge these rulings of the District Court. *See* Appellant's Brief at 6 nn. 4 & 5.

**4**

B. *The District Court Rulings*

Three rulings of the District Court are relevant to this appeal. First, on May 17, 1979, the District Court granted motions to dismiss filed by Arlington County, Montgomery County and their respective chiefs of police. *See* R.E. 11–15. The District Court noted that, under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), municipalities cannot be held liable under section 1983 on a *respondeat superior* theory of liability. Rather, municipal liability attaches only to actions taken pursuant to some official policy or custom of the municipality. *See* 436 U.S. at 690–94, 98 S.Ct. at 2035–2037. Applying this principle to both appellant's section 1983 and constitutional claims, the court held that the counties and their chiefs of police could not be held liable on a *respondeat superior* theory and that the complaint did not allege that these defendants were directly involved in any of the alleged incidents of police misconduct. R.E. 12–13. Having dismissed the federal claims against those defendants, the court also dismissed the pendent common law claims against them pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). R.E. 13.

The second ruling challenged on appeal is the District Court's grant of summary judgment to the remaining Arlington County defendants—four Arlington police officers—on April 16, 1980. *See* R.E. 16–23.[6]

With respect to the May 25, 1978 interview of appellant, the court found that three of the four Arlington officers were completely uninvolved in the incident and could not be liable either directly or on a *respondeat superior* theory. R.E. 17–18. The one officer involved, Robert Carrig, filed an uncontroverted affidavit denying that any physical assault and battery, verbal abuse, or entry without permission had occurred. Based on appellant's failure to submit any evidence in response to Carrig's denials, the court held that "no actionable violations occurred" and that summary judgment was appropriate under Fed.R.Civ.P. 56(e). R.E. 18–19.[7] As to appellant's claims concerning the June 9, 1978 search of his home, the court granted summary judgment to the four Arlington officers because it was undisputed that none of them were present during that search. R.E. 22.[8]

The third, and most complicated, ruling at issue is the District Court's decision on January 29, 1981 to grant summary judgment to the District of Columbia, its chief of police, Burtell M. Jefferson, District of Columbia Detective Greene and Montgomery County police officer Booth. *See* R.E. 24–32.[9] The court granted Booth's motion for summary judgment as to appellant's claims concerning the June 9, 1978 search[10] based largely on an affidavit filed by Booth. In that affidavit Booth stated that he did not touch or assault appellant or witness any touching or assaulting of appellant,

**6.** The District Court explained its April 16, 1980 decision to grant the motions for summary judgment in a written memorandum opinion issued on April 30, 1980. *See* R.E. 16–23.

**7.** The District Court also stated that verbal abuse alone is insufficient to state a cause of action under § 1983, citing, *inter alia, Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), for the proposition that liability depends upon a showing of physical assault and battery. R.E. 18–19. This proposition, however, was not the court's basis for granting summary judgment. *See* Part II.A. *infra*.

**8.** The court also dismissed the pendent claims against the four Arlington defendants under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). R.E. 22.

**9.** A number of other officers from Montgomery County and the District of Columbia were named in the complaint but were never served process. The District Court stated that, "because the basis for granting summary judgment applies equally to them, the court will likewise issue summary judgment in their favor." R.E. 24 n.2. Appellant has not challenged that decision on appeal.

**10.** The District Court also granted summary judgment as to the May 25, 1978 and June 2, 1978 incidents because appellant did not allege, and there was no evidence to suggest, that Booth was involved in either of those incidents. R.E. 25.

that he did not damage any property except as necessary to execute the warrant, and that he did not take any property other than the items listed in the returned warrant. The court found, first, that appellant had not met his burden under Fed.R.Civ.P. 56(e) and Local Rule 1–9(h) of producing evidence to contradict Booth's sworn denial that any assault and battery took place. Second, based on its reading of another affidavit that led to the issuance of the search warrant, the court rejected appellant's claim that the warrant was not based upon probable cause. Finally, the court held that appellant had raised no genuine issues of fact as to whether the search warrant was reasonably executed. R.E. 26–27.

The court granted summary judgment to District of Columbia Detective Greene as to the June 9, 1978 search for similar reasons. It again concluded that the search warrant was supported by probable cause and that appellant had failed to produce evidence to support his contention that Greene had acted unreasonably in executing the warrant. R.E. 30. With respect to the May 25, 1978 incident, the court found that appellant had neither alleged in his complaint nor produced any evidence of an assault and battery by Greene. Nor had appellant produced any evidence to contradict the statement in the affidavit of Arlington County Detective Carrig, who had accompanied Greene during the May 25 interview, denying that the officers had entered appellant's home without permission. In addition, the court again noted that appellant's allegation of verbal abuse, without any assault and battery, was inadequate to state a claim under section 1983. The court concluded that, given appellant's "total failure to raise any specific factual issues," it was appropriate to grant summary judgment to Greene as to the May 25 interview. R.E. 29.

The court also granted summary judgment to the District of Columbia and its chief of police, Burtell Jefferson, on both the section 1983 and the *Bivens* claims. First, the District Court rejected appellant's section 1983 claim because section 1983 did not cover deprivations of federal rights committed under color of District of Columbia law at the time of the alleged police misconduct in this case.[11] Second, the court held that summary judgment as to the constitutional claims against the District of Columbia and its police chief was appropriate because appellant had failed to present any evidence of liability-creating acts by police officers of the District of Columbia upon which *respondeat superior* liability could be based. In addition, it suggested that the proscription in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), against *respondeat superior* liability might independently bar recovery on appellant's constitutional claims because appellant had failed to show that these defendants were involved in the alleged violations or that the violations were authorized under a custom or policy of the District of Columbia. R.E. 27–29.[12]

Appellant argues on appeal that the District Court erred in granting summary judgment to the individual police officers involved in the May 25, 1978 and the June 9, 1978 incidents. Specifically, he argues that the District Court erroneously relied upon *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), for the proposition that appellant could not succeed in his federal claims without evidence of physical assault and battery. In addition, appellant contends that the District Court erred in

---

11. Section 1983 was amended in December 1979 to cover acts committed under color of law of the District of Columbia but, as the District Court noted, R.E. 28, that amendment had only prospective effect, *see* Act of December 29, 1979, Pub.L.No. 96–170, §§ 1, 3, 93 Stat. 1284 (codified at 42 U.S.C. § 1983 (Supp. IV 1980)), and thus could not apply to the actions challenged by appellant in this case.

12. Having rejected the federal claims against Montgomery County officer Booth and all of the District of Columbia defendants, the court dismissed all of the pendent claims against them as well. R.E. 27, 31.

holding that the municipalities and their chiefs of police could not be held liable on a *respondeat superior* theory on appellant's constitutional, as opposed to his section 1983, claims.

## II. LIABILITY OF THE INDIVIDUAL POLICE OFFICERS

### A. *Claims Concerning the May 25, 1978 Incident*

█ Appellant maintains that the District Court erred in granting summary judgment to Detectives Carrig and Greene, the two police officers involved in the May 25, 1978 incident, on the ground that appellant failed to present any evidence of a physical assault and battery. Certain language in the District Court's written opinions does, at first blush, support appellant's contention. Specifically, the District Court stated in its April 30, 1980 and January 29, 1981 opinions that verbal abuse alone is insufficient to state a cause of action under section 1983,[13] citing, *inter alia, Johnson v. Glick* for the proposition that liability under that statute depends upon a showing of physical assault and battery. *See* R.E. 18–19, 29. Although we agree with appellant's contention that the District Court misinterpreted *Johnson v. Glick, see* Part II.B. *infra,* we do not believe that its decision rested on that misinterpretation. On the contrary, reading the court's opinions in their entirety, it is clear that the District Court decision is based upon appellant's failure to produce evidence of any conceivable violation.

The court granted summary judgment to Detective Carrig because appellant failed to produce any evidence to contradict the affidavit in which Carrig denied that any assault and battery, verbal abuse, or entry without permission occurred during the May 25, 1978 interview. In its April 30,

1980 memorandum opinion, the court expressly stated that appellant's "failure to present any evidence to the contrary of Carrig's sworn denials leads this court to grant the motion [for summary judgment] as to the May 25 interview." R.E. 19. Similarly, the District Court's January 29, 1981 opinion makes it clear that the court granted summary judgment to District of Columbia Detective Greene regarding the May 25, 1978 incident because of appellant's "total failure to raise any specific factual issues, and the fact that the undisputed facts do not support [appellant's] claim of constitutional violation . . . ." R.E. 29. Thus, we conclude that the District Court's decision to grant summary judgment to the officers was not based on an erroneous construction of the requirements for establishing a constitutional claim under section 1983.

█ We also uphold the District Court's conclusion that appellant failed to raise any issues of fact material to his claims that the police officers violated his Fourth Amendment rights during the May 25, 1978 interview. Under Rule 56(e), Fed. R.Civ.P., when a party has properly pleaded and supported a motion for summary judgment, the opposing party "must set forth specific facts showing that there is a genuine issue for trial" and "may not rest upon the mere allegations or denials of his pleading . . . ." Local Rule 1–9(h) of the United States District Court for the District of Columbia further requires a party opposing summary judgment to file "a concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, and shall include therein references to the parts of the record relied on to support such statement."[14] Appellant clearly did not comply with these rules.[15]

---

**13.** Appellant does not contend on appeal that verbal abuse alone is sufficient to establish a Fourth Amendment claim under § 1983.

**14.** Local Rule 1–9(h) also states that "the court may assume that the facts as claimed by the moving party in his statement of material facts are admitted to exist except as and to the extent that such facts are controverted in a statement filed in opposition to the motion."

**15.** This court has made it clear that "failure to file a proper Rule 1–9(h) Statement in making or opposing a motion for summary judgment may be fatal to the delinquent party's position." *Gardels v. CIA,* 637 F.2d 770, 773 (D.C. Cir.1980); *see Thompson v. Evening Star Newspaper Co.,* 394 F.2d 774, 776–77 (D.C. Cir.), *cert. denied,* 393 U.S. 884, 89 S.Ct. 194, 21 L.Ed.2d 160 (1968).

In opposing the motion for summary judgment filed by the Arlington County police officers, appellant generally argued that disputed factual issues remained but did not specifically controvert any of the denials in Detective Carrig's affidavit. Nor did he cite any record evidence, relying instead on the complaint itself. *See* Record, Entry No. 58. In opposing the motion for summary judgment filed by the District of Columbia defendants, appellant did submit a statement of genuine factual issues. In that statement, however, he did not set forth specific, material facts, but simply asserted, without citing evidence in the record, that there was a disputed issue as to "the nature and extent of Defendant Greene's involvement in the May 25, 1978, incident and whether such conduct amounted to an assault or battery." Record, Entry No. 93.[16] Given this record, we hold that the District Court did not err in concluding that appellant failed to raise any specific factual issues concerning the May 25, 1978 incident or in granting summary judgment to appellees Carrig and Greene for that reason.[17]

## B. *The June 9, 1978 Search of Appellant's Home*

The District Court granted summary judgment to Montgomery County police officer Booth and District of Columbia Detective Greene as to the claims concerning the June 9, 1978 search because it found, based essentially on Booth's affidavit, that the officers had reasonably executed the search warrant.[18] Appellant argues, as he did with respect to the District Court's rulings concerning the May 25, 1978 incident, that this decision was based upon the mistaken view that *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94

---

**16.** Even in his brief on appeal appellant suggests there are disputed factual issues concerning the May 25, 1978 incident, but cites only the complaint and answers to interrogatories that were never called to the attention of the District Court. *See* Appellant's Brief at 10–11. The Arlington County appellees argue that appellant could not rely on his answers to interrogatories in opposing their motion for summary judgment because the answers were filed in violation of a deadline in a District Court order compelling discovery. The District Court apparently never acted on appellant's motion for leave to file the answers late. We find it unnecessary to decide now whether the answers were properly before the District Court because we agree that, having never brought the answers to the attention of the District Court in opposing appellees' motions for summary judgment, appellant cannot rely on them on appeal to obtain a reversal.

**17.** At oral argument on appeal, counsel for appellant raised a new argument concerning the May 25, 1978 incident. He suggested that the police officers involved violated appellant's Fourth Amendment rights by continuing to interrogate appellant and refusing to leave his home after he had repeatedly demanded that they leave. Clearly, oral argument on appeal is not the proper time to advance new arguments or legal theories in opposition to a motion for summary judgment. *See* 10 C. Wright & A. Miller, Federal Practice and Procedure § 2716, at 435–36 (1973). Appellant did not articulate this argument before the District Court, let alone present evidence to support it. Understandably, then, the District Court never addressed the argument in disposing of the mo-

tions for summary judgment. Even in his brief on appeal, appellant did not raise this argument. Rather, his sole argument in the brief was that the District Court erroneously based its decision to grant summary judgment on the absence of evidence of physical assault and battery. We have already rejected that argument and need do no more. It is not the task of this court to consider all of the implications of a theory vaguely raised for the first time at oral argument on appeal and to search the record for supporting evidence. For even if we found ourselves in agreement with appellant, to reverse the District Court's decision to grant summary judgment on the basis of a new argument, jointly developed by appellant and this court, would undeniably undermine the integrity of the adversarial process and the authority of the District Court to fairly and effectively control the litigation before it. We decline to do so.

Appellees have argued that we should affirm the District Court's decision on the ground that no Fourth Amendment violation could possibly have occurred during the May 25 incident because, technically, no search, seizure or arrest took place. We need not determine whether this would be an adequate response to the new argument belatedly raised by appellant on appeal. The answer to the question regarding the breadth of Fourth Amendment protection thus must await another day.

**18.** Appellant has not challenged the District Court's additional holding that the warrant was based upon probable cause and was otherwise valid.

S.Ct. 462, 38 L.Ed.2d 324 (1973), requires proof of physical assault and battery to establish a claim under section 1983. We must agree. A close examination of the language of the District Court's January 29, 1981 decision indicates that the court applied this erroneous legal standard in granting summary judgment. In holding that appellant raised no factual issue as to whether Booth had reasonably executed the search warrant, the court stated:

> Ordinarily, reasonableness of conduct is a question of fact, for the jury. However, the essential facts (i.e., what transpired during the search) are not in dispute. Based on those undisputed facts, even as set out in plaintiff's own deposition, the court concludes that the plaintiff has failed to meet his burden of producing some evidence to support this claim and hence has failed to make out a jury question. *This follows from Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973), which stands for the proposition that a section 1983 claim requires actual physical assault and battery. There is no such evidence in this case.*

R.E. 26–27 (emphasis added).[19] This language makes it clear that the District Court viewed evidence of assault and battery as a prerequisite to establishing a claim that the search warrant was unreasonably executed.[20]

■ Contrary to the District Court's reading, *Johnson v. Glick* does not stand for the general proposition that physical assault and battery is an essential element of any constitutional claim under section 1983. The opinion in *Johnson*, which involved a prisoner's Eighth Amendment claim under section 1983 against the prison warden and a correction officer, does make it clear that section 1983 is not coterminous with the common law of tort. Acts that may constitute a common law assault or battery are not necessarily constitutional violations actionable under section 1983. 481 F.2d at 1033. *Johnson* does not suggest, however, that evidence of assault and battery is a requisite of every constitutional claim under section 1983. It requires no citation of authority to state with certainty that an individual's Fourth Amendment rights can be violated without an assault or battery. If this were not so, a warrantless search wholly unsupported by probable cause would not transgress the Fourth Amendment provided there was no physical interference with an individual.

■ Nor does a claim that police violated the Fourth Amendment in executing a valid search warrant depend on a showing of assault and battery. The conduct of police officers in executing a search warrant is always subject to judicial review as to its reasonableness, *Dalia v. United States*, 441 U.S. 238, 258, 99 S.Ct. 1682, 1694, 60 L.Ed.2d 177 (1979), and officers may be held liable under section 1983 for executing a warrant in an unreasonable

---

**19.** The District Court stated that appellant similarly failed to produce any evidence that Detective Greene had unreasonably executed the warrant. R.E. 30.

**20.** Read in context, the District Court's conclusion that, based on the undisputed facts in appellant's deposition, appellant failed to produce any evidence to support his claim can only mean that appellant failed to produce any evidence of "actual physical assault and battery." R.E. 27. Appellant's September 10, 1980 deposition does contain evidence that the police officers damaged property when they searched appellant's home on June 9, 1978. In the deposition, appellant states, for example, that furniture, wall paneling, ceiling tiles, a tape deck and an amplifier system were damaged. *See* Deposition of Fred Tarpley, Sr., September 10, 1980, Record, Entry No. 85, at 29–

34, 36–39, 42–43, 55, 59–62. Clearly, then, the facts concerning whether, and to what extent, property was damaged during the search are not, as the District Court apparently concluded, "undisputed." Conceivably, the District Court might have meant that the property damage, even as alleged in appellant's deposition, occurred as part of a reasonable execution of the search warrant. If the District Court reached this conclusion, however, it nowhere stated or explained it, stating instead that there was no factual dispute at all as to what transpired during the search. The only plausible explanation of the District Court's analysis is that there was no evidence, even in appellant's deposition, of assault and battery and that, as the subsequent language of the opinion indicates, the court viewed appellant's undisputed failure to produce such evidence as fatal to his claim.

manner. *Duncan v. Barnes*, 592 F.2d 1336, 1338 (5th Cir. 1979).[21] Whether a search is unreasonable "by virtue of its intolerable intensity and scope," *Terry v. Ohio*, 392 U.S. 1, 18, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968), must be determined by the particular facts of the case, including the scope of the search authorized by the warrant. It is a "longstanding requirement[ ] that the officers remain on the premises only so long as is reasonably necessary to conduct the search and that they avoid unnecessary damage to the premises . . . ." 2 W. La-Fave, Search and Seizure § 4.10, at 161 (1978). *See also Clifton v. Robinson*, 500 F.Supp. 30, 35 (E.D.Pa.1980) (even prisoners, whose prison cells can be searched without probable cause, may be able to establish a Fourth Amendment violation by showing that their personal property was unnecessarily "damaged or destroyed during a search" or that their cells were "subjected to purposeful and unnecessary disruption"); *Brown v. Hilton*, 492 F.Supp. 771, 775 (D.N.J.1980). This is not to suggest that destruction of property necessarily violates the Fourth Amendment. We recognize that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258, 99 S.Ct. 1682, 1694, 60 L.Ed.2d 177 (1979). The touchstone, however, is reasonableness; destruction of property that is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment.

■ The District Court's decision to grant summary judgment to Detectives Booth and Greene was based not on appellant's failure to present any evidence to show that the June 9 search transgressed these general standards of reasonableness, but on appellant's failure to present evidence of physical assault and battery. Because the District Court used an erroneous legal standard, we reverse its grant of summary judgment to appellees Booth and Greene with respect to appellant's claims concerning the June 9, 1978 search. On remand, if Booth and Greene renew their motions for summary judgment, the District Court should determine whether there are any genuine factual issues concerning the reasonableness of their execution of the search warrant on June 9, 1978. The court should bear in mind appellant's obligation, assuming that appellees' motions are properly filed and supported, to identify those issues and to point to supporting evidence in the record.[22]

### III. *Respondeat Superior* LIABILITY ON *Bivens* CLAIMS

■ In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court squarely held that Congress did not intend local governments to be subject to *respondeat superior* liability under 42 U.S.C. § 1983 for the acts of their employees. 436 U.S. at 691, 694, 98 S.Ct. at 2036, 2037. Appellant contends that the District Court erred in extending *Monell*'s proscription to his claims brought directly under the Constitution pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). We disagree.

As appellant concedes, every Circuit that has considered this question following the decision in *Monell* has concluded that municipalities are not subject to *respondeat superior* liability in *Bivens* actions. *Ellis v. Blum*, 643 F.2d 68, 85 (2d Cir. 1981); *Dean v. Gladney*, 621 F.2d 1331, 1334–37 (5th Cir. 1980), *cert. denied*, 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981); *Jones v. City of Memphis*, 586 F.2d 622, 624–25 (6th Cir. 1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1230, 59 L.Ed.2d 464 (1979); *Molina v. Richardson*, 578 F.2d 846, 847–54 (9th Cir.), *cert.*

---

21. The manner in which a search is conducted can be unreasonable "even if the conduct did not rise to the shocking level of a due process violation." *United States v. Penn*, 647 F.2d 876, 882–83 (9th Cir.), *cert. denied*, 449 U.S. 903, 101 S.Ct. 276, 66 L.Ed.2d 134 (1980).

22. If appellant seeks to rely on his answers to interrogatories that appellees allege were filed in violation of an order compelling discovery, the District Court should determine whether those answers are properly before it and may be relied upon by appellant. *See* note 16 *supra*.

*denied,* 439 U.S. 1048, 99 S.Ct. 724, 58 L.Ed.2d 707 (1978); *see Cale v. City of Covington,* 586 F.2d 311, 317–18 (4th Cir. 1978) (no *Bivens* action available against municipalities after *Monell*); *cf. DeShields v. United States Parole Commission,* 593 F.2d 354, 356 (8th Cir. 1979) (no *respondeat superior* liability in *Bivens* claim against U.S. Parole Commission). Similarly, courts that considered the question prior to *Monell* also ruled that municipalities cannot be held liable on a *respondeat superior* theory in *Bivens* actions. *E.g., Turpin v. Mailet,* 579 F.2d 152, 166–67 (2d Cir.) (en banc), *vacated on other grounds,* 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978) (for reconsideration in light of *Monell*); *Jamison v. McCurrie,* 565 F.2d 483, 485 (7th Cir. 1977); *Kostka v. Hogg,* 560 F.2d 37, 41–44 (1st Cir. 1977); *cf. Nix v. Sweeney,* 573 F.2d 998, 1003 (8th Cir. 1978) (sovereign immunity protects municipalities from *respondeat superior* liability in *Bivens* claims).[23]

*Respondeat superior* liability was not in issue in *Bivens,* and nothing in *Bivens* suggests that *respondeat superior* liability must be available in actions brought directly under the Constitution. *See Dean v. Gladney,* 621 F.2d 1331, 1335–36 (5th Cir. 1980), *cert. denied,* 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981). Indeed, one of the reasons the Court in *Bivens* held that individuals whose Fourth Amendment rights were violated by federal officials had an implied cause of action for damages directly under the Constitution was that no other remedy was available. *See Hearth, Inc. v. Department of Public Welfare,* 617 F.2d 381, 382 (5th Cir. 1980). Clearly, that is not the situation in this case, in which appellant seeks relief under section 1983 as well as under the Constitution.

Appellant argues that *Monell*'s interpretation of section 1983 does not preclude us from allowing *respondeat superior* liability against local governments in *Bivens* actions. This argument is subject to serious doubt. First, we note that in two cases remanded by the Supreme Court for reconsideration in light of *Monell, City of West Haven v. Turpin,* 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978), *vacating Turpin v. Mailet,* 579 F.2d 152 (2d Cir. 1978) (en banc); *City of Independence v. Owen,* 438 U.S. 902, 98 S.Ct. 3118, 57 L.Ed.2d 1145 (1978), *vacating* 560 F.2d 925 (8th Cir. 1977), the courts of appeals decided on remand that a *Bivens* action against municipalities was no longer appropriate in light of *Monell. Turpin v. Mailet,* 591 F.2d 426, 427 (2d Cir. 1979) (en banc) ("there is no place for a cause of action against a municipality directly under the 14th Amendment, because the plaintiff may proceed against the [city] under § 1983"); *Owen v. City of Independence,* 589 F.2d 335, 337 (8th Cir. 1978) (finding it "unnecessary to rely on the *Bivens* doctrine" because "[b]y enacting section 1983, Congress has provided an appropriate and exclusive remedy for constitutional violations committed by municipalities"), *rev'd on other grounds,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). *See also Cale v. City of Covington,* 586 F.2d 311, 317–18 (4th Cir. 1978). Although we need not go so far as to hold that section 1983 now bars any *Bivens* action against municipalities, these cases clearly undermine appellant's contention that *Monell* does not preclude a *Bivens* claim against local governments based solely on a *respondeat superior* theory.[24]

**23.** We do not consider this Circuit's prior decision in *Dellums v. Powell,* 566 F.2d 216 (D.C. Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), controlling in this case because it was decided before *Monell.*

**24.** In *Bivens,* the Court stated, "we have here no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress." 403 U.S. at 397, 91

S.Ct. at 2005. Appellant contends that § 1983 cannot be viewed as an "equally effective" remedy, essentially because under that statute municipalities are not subject to *respondeat superior* liability. Consequently, he argues, federal courts are free to impose *respondeat superior* liability on municipalities in *Bivens* actions. We cannot accept this rather circular reasoning. Congress *has* prescribed a remedy for individuals whose constitutional rights are violated by local governments acting under col-

Second, we think it significant that the decision in *Monell* clearly applied to claims of *constitutional infringement* brought pursuant to section 1983. Indeed, the Court in *Monell* observed that "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution ...." 436 U.S. at 690, 98 S.Ct. at 2035. With this in mind, we believe that it would be anomalous indeed to acknowledge that local governments are not subject to *respondeat superior* liability on claims of constitutional violation brought under section 1983 and, at the same time, hold that municipalities may be held liable on a theory of *respondeat superior* on precisely the same constitutional claims brought directly under the Constitution.[25]

The anomaly to which we refer is highlighted in this case. Appellant here seeks broader relief in his *Bivens* claim than in his section 1983 claim, based on precisely the same facts and the same legal theory, *i.e.*, that his Fourth Amendment rights had been infringed. Although *Monell* did not decide the issue, we believe that a fair reading of the Court's decision forecloses appellant's contention that municipalities may be made subject to *respondeat superior* liability in a *Bivens* action of this sort. Consequently, we affirm the District Court's rulings insofar as they decline to imply an expanded *Bivens* cause of action that would hold the government appellees and the chiefs of police liable solely on a *respondeat superior* theory.

## IV. CONCLUSION

We conclude that the District Court did not err in granting summary judgment to appellees Carrig and Greene with respect to appellant's claims arising from the May 25, 1978 incident. Nor did the court err in refusing to allow appellant to proceed solely on a theory of *respondeat superior* in his *Bivens* claims against the government appellees and their chiefs of police. For the reasons set forth in Part II.B., however, we conclude that the District Court erred in granting summary judgment to appellees Greene and Booth as to the June 9, 1978 search of appellant's home on the ground that appellant failed to present evidence of assault and battery. We therefore reverse this aspect of the District Court's April 30, 1980 and January 29, 1981 rulings and remand for further proceedings consistent with this opinion. On remand the District Court may consider, using the appropriate legal standards, any renewed motions for summary judgment. In all other respects, the District Court's rulings are affirmed.

*So ordered.*

---

or of State law. We do not believe the Court in *Bivens* meant, by using the words "equally effective," that federal courts could expand an implied cause of action under the Constitution in order to circumvent the remedy prescribed by Congress simply because Congress saw fit to limit that remedy in some fashion.

25. We do not mean to suggest that the limits of constitutional protection are defined by reference to the remedial reach of a congressional enactment. Rather, our decision turns on several straight-forward considerations: (1) the Supreme Court has never suggested that *respondeat superior* liability must be available in actions brought directly under the Constitution; (2) the decisions in *Bivens* and *Monell* do not in any manner support appellant's claim here; and (3) every Circuit that has considered the question following *Monell* has concluded that municipalities are not subject to *respondeat superior* liability in *Bivens* actions. Because Congress has elected not to impose *respondeat superior* liability under § 1983, appellant invites this court to expand the remedial options available under *Bivens*. We can find no good logic nor sound legal basis for this view; we therefore decline the invitation.