**UNITED STATES of America, Plaintiff,**

v.

**Shawn L. DIGHERA, Defendant.**

**No. 97–40072–01–DAC.**

United States District Court,
D. Kansas.

Feb. 2, 1998.

Robin D. Fowler, Office of U.S. Atty., Topeka, KS, for Plaintiff.

Alan G. Warner, Warner, Bixler & Associates, L.L.C., Topeka, KS, Steven D. Rosel, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On September 17, 1997, the grand jury returned a nine count indictment charging the defendant, Shawn L. Dighera, with multiple drug trafficking crimes, including manufacturing methamphetamine. The evidence supporting these charges was seized by officers executing a search warrant. Prior to obtaining the search warrant, the officers had responded to an alarm at Dighera's residence. Finding a door to the residence open, officers entered, finding no one inside the home. However, officers conducting the search viewed substantial evidence of narcotics trafficking laying in plain sight. Based upon their observation of those materials in plain sight, officers obtained the search warrant.

This case comes before the court upon the defendant's "Motion to Suppress" (Dk.21). In his motion, Dighera apparently argues that the initial entrance and subsequent warrantless search of his home by law enforcement officers were in violation of the Fourth Amendment. Specifically, Dighera argues that no exigent circumstances justified the officers' initial entry. Dighera also contends that once inside, the officers' search was not limited in scope to the purported exigent circumstances. The government responds, arguing that the officers' initial entry to the property was in response to a security alarm. Finding a door open, officers lawfully entered under the "exigent circumstances" exception to the Fourth Amendment. The government also contends that the initial search of the residence was limited to searching places that a burglar might have secreted himself, such as in rooms and closets.

### Legal Standards

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *United States v. Scroger,* 98 F.3d 1256, 1259 (10th Cir.1996) (*citing Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)), *cert. denied,* —— U.S. ——, 117 S.Ct. 1324, 137 L.Ed.2d 485 (1997). "Therefore, absent consent or exigent circumstances, police may not enter a citizen's residence without a warrant." *Id.*

### Burden of Proving Exigent Circumstances

■ The government bears the burden of proving exigency. *United States v. Wicks,* 995 F.2d 964, 970 (10th Cir.), *cert. denied,* 510 U.S. 982, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993).

"In assessing whether the burden was met, we are 'guided "by the realities of the situation presented by the record." ' " *United States v. Cuaron,* 700 F.2d at 586 (*quoting United States v. McEachin,* 670 F.2d 1139, 1144 (D.C.Cir.1981) (*quoting United States v. Robinson,* 533 F.2d 578, 581 (D.C.Cir.1975) (en banc))). We must " 'evaluate the circumstances as they would have appeared to prudent, cautious and trained officers.' " *United States v. Cuaron,* 700 F.2d at 586 (*quoting United States v. Erb,* 596 F.2d 412, 419 (10th Cir.), *cert. denied,* 444 U.S. 848, 100 S.Ct. 97, 62 L.Ed.2d 63 (1979)). We note, also, that there is " 'no absolute test for the presence of exigent circumstances, because such a determination ultimately depends on the unique facts of each controversy.' " *United States v. Justice,* 835 F.2d 1310, 1312 (10th Cir.1987) (*quoting United States v. Jones,* 635 F.2d 1357, 1361 (8th Cir.1980)), *cert. denied,* 487 U.S. 1238, 108 S.Ct. 2909, 101 L.Ed.2d 940 (1988).

"When officers have reason to believe that criminal evidence may be destroyed, or removed, before a warrant can be obtained, the circumstances are considered sufficiently critical to permit officers to enter a private residence in order to secure the evidence while a warrant is sought."

*United States v. Chavez,* 812 F.2d 1295, 1299 (10th Cir.1987) (quoting *United States v. Cuaron,* 700 F.2d 582, 586 (10th Cir.1983)) (citations omitted); *see also United States v. Carr,* 939 F.2d at 1448; *United States v. Aquino,* 836 F.2d 1268, 1272 (10th Cir.1988). In addition to insuring that evidence will not be destroyed, officers may also make a warrantless arrest or conduct a warrantless search if they believe that their own lives or the lives of others are at risk. *Warden v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct.

1642, 1645–46, 18 L.Ed.2d 782 (1967) ... *United States v. Smith*, 797 F.2d 836, 840 (10th Cir.1986) ("[t]he basic aspects of the 'exigent circumstances' exception are that (1) the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched"); *United States v. Gonzalez*, 763 F.2d 1127, 1132 n. 5 (10th Cir.1985) (" '[e]xigent circumstances' ·generally refers to ...: imminent danger of death or serious bodily harm, imminent danger of destruction of important property, response to an emergency, or hot pursuit.").

*Id.*

### Plain View Exception To Fourth Amendment

"Law enforcement authorities may seize contraband in plain view without a warrant if three conditions are met: (1) the law enforcement authorities are lawfully in a position from which they may view the object; (2) the object's incriminating character is immediately apparent; and, (3) the authorities have a lawful right of access to the object." *United States v. Lang*, 81 F.3d 955, 967 (10th Cir.1996) (*citing Minnesota v. Dickerson*, 508 U.S. 366, 374, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)).

### Findings of Fact

On December 10, 1996, officers of the Topeka police department were dispatched to the residence located at 3620 S.W. Garfield at about 2:00 a.m. The dispatch was precipitated by a security alarm activation at the defendant's home which was reported to the police department by Knight's Alarm Company. When officers responded to the scene, they found the front door open and that no one from inside the residence responded to the police. No other signs of a break-in were apparent. Officers announced their presence upon entering the home through the open door to check to see whether a burglary had occurred or was in progress. While conducting their search for burglars or other persons inside the residence, officers observed drug paraphernalia in plain view. The residence was then secured, and a search warrant was obtained based upon their observations. A number of drug-related items were seized during the search of the premises pursuant to the search warrant. The seizure of those items ·eventually lead to the current charges against the defendant.

### Analysis

Although the Tenth Circuit has apparently not addressed this specific issue, it appears well-settled that responding to a burglary alarm (or other reports of a possible burglary) is an exigent circumstance authorizing the police to make a warrantless entry to a home. In *United States v. Tibolt*, 72 F.3d 965, 970–71 (1st Cir.1995), *cert. denied*, 518 U.S. 1020, 116 S.Ct. 2554, 135 L.Ed.2d 1073 (1996), the First Circuit, considering facts somewhat similar to the case at bar,[1] recently found that officers responding to a security alarm were presented with exigent circumstances permitting an immediate warrantless entry:

A security alarm had been activated, and when JK Security placed a call to the Dombrowski residence, it had received no answer. These circumstances severely undercut any likelihood that the security alarm had been activated inadvertently by a resident. Moreover, upon his arrival approximately ten minutes later, Palazzola checked all windows and doors at the Tibolt residence. Instead of finding all doors secured, as one might reasonably expect while the residents are away, he found an unlocked door on the rear deck and received no response to his efforts to communicate with anyone who might be inside. These circumstances significantly enhanced the likelihood of an intruder.

In the case at bar, officers clearly proceeded to the address at which an alarm had been reported. In fact, the alarm was still audibly sounding until officers dismantled it so as to execute the search warrant without the cacophony of the blaring siren in the background.

---

1. In *Tibolt*, Officers responding to the alarm at the Dombrowski residence inadvertently entered the wrong residence, Tibolt's, by mistakenly entering the wrong driveway. Nevertheless, the fruits of the warrantless entry into Tibolt's residence were not suppressed.

For similar reasons, we conclude that Palazzola was presented with "exigent circumstances" permitting an immediate warrantless entry. Without entering, he could not know but what an intruder had managed to get into the residence, and even injured or captured a resident, then fled; or had been caught off guard by the police and remained in the residence with a forcibly detained resident. Even the authorities cited by Tibolt acknowledge the potential exigencies attending such circumstances. *See Erickson*, 991 F.2d. at 533 ("In a wide variety of contexts, this and other circuits have upheld warrantless searches conducted during burglary investigations under the rubric of exigent circumstances."); *Commonwealth v. Fiore*, 9 Mass.App.Ct. 618, 403 N.E.2d 953, 955 ("It seems clear to us that a house break without more as set out in the affidavit raises the possibility of danger to an occupant and of the continued presence of an intruder and indicates the need to secure the premises. In such circumstances '(t)he right of the police to enter and investigate in an emergency without the accompanying intent to either search or arrest is inherent in the very nature of their duties as peace officers.'") (citation omitted), *cert. denied*, 449 U.S. 938, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980). Hindsight discloses, of course, that Palazzola was mistaken. Nevertheless, at the time, *see Rodriguez*, 497 U.S. at 186, 110 S.Ct. at 2800, an officer confronted with these circumstances reasonably could have concluded that there was an imminent risk "to the lives or safety of the public," *Hegarty*, 53 F.3d at 1374, or to an injured or immobilized resident. *See, e.g., Murdock v. Stout*, 54 F.3d 1437, 1443 (9th Cir.1995) (upholding warrantless search of residence following burglary report, where investigating officers found some signs that resident might have been at home when an intruder entered dwelling, and received no response to their calls, thereby creating a "fair probability that ... a resident might be in need of assistance") (distinguishing prior circuit precedent in *United States v. Erickson*, 991 F.2d 529 (9th Cir.1993)). Accordingly, the district court did not err in denying the motion to suppress.

*Id.* at 970–71 (footnotes omitted). Several other courts have reached similar results. *See, e.g., Murdock*, 54 F.3d at 1443; *United States v. Johnson*, 9 F.3d 506, 509–510 (6th Cir.1993), *rehearing denied*, 16 F.3d 680 (6th Cir.), *cert. denied*, 512 U.S. 1212, 114 S.Ct. 2690, 129 L.Ed.2d 821 (1994); *United States v. Moore*, 817 F.2d 1105, 1107 (4th Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987).

█ The court finds the government has carried its burden of proving that officers reasonably responded to the exigent circumstances they encountered at the Dighera residence on the morning of December 10, 1996. That there had been false alarms in the past is of no consequence, as the officers arriving on that early morning had no personal knowledge of those false alarms. More importantly, upon arriving at the site of a reported alarm, officers found an open door and no one responding to their presence. The officers clearly acted reasonably in entering the home and searching for possible burglary suspects or injured or incapacitated residents. No credible evidence suggested that the officers' entry was a pretext for an unlawful search.

### Send in the Dog

█ One of the officers responding to the dispatch, Officer McKinley, is a member of the canine unit. During oral argument, counsel for the defendant argued that it would have been more appropriate to send in Officer McKinley's dog to search the residence, apparently deeming the search by a quadruped more palatable than a search by humans. The court presumes that the defendant believes this alternative would have been a superior option, for in all likelihood the dog would not have returned from his search of the home with a report of the presence of drugs and drug paraphernalia.

The court finds that the officers in this case performed their initial sweep of the interior of the house in a lawful and reasonable manner. Officer McKinley testified that he did not use his canine in the search of the home as he saw evidence outside the home which lead him to believe that the owners of the home also owned a dog. Rather than risk the carnage associated with a dog fight, the officers decided to inspect the interior of

the home themselves. The court finds Officer McKinley's testimony on this issue credible.

In any event, the fact that officers chose to conduct the search themselves was an imminently reasonable decision under the totality of circumstances. Although canines routinely provide valuable assistance to law enforcement officers, the superior cognitive skills and opposable thumb of human officers provide obvious advantages over a trained dog in conducting a search of a residence.

### Scope of the Search

■ Contrary to the defendant's suggestion, the officers' initial search of the residence did not exceed the scope of the exigent circumstances justifying its inception. Officers did not open drawers or containers in their initial search of the residence. Nor did officers move or open items to conduct a general exploratory search of the residence under the pretext of looking for a burglar of unusually diminutive stature. In short, the officers properly searched areas within the residence in which a human being might reasonably have been located.

### Second Search

Upon returning with the search warrant, Officer Listrom and Officer Voigt, two officers trained in evaluating the dangers of methamphetamine labs, donned protective garb and breathing apparatuses to perform a safety sweep of the residence prior to allowing the search team inside. After determining that the materials visible inside the residence did not pose a risk of danger to the officers, the two stepped outside of the residence, removed their protective clothing and informed the other officers that it was safe to enter the residence to execute the search warrant.

During oral argument, counsel for the defendant argued that the search warrant only authorized one entry and search of Dighera's residence. Dighera argues that once Officers Listrom and Voigt stepped outside the confines of the dwelling, the search authorized by the warrant was completed and that officers could not re-enter the home again without obtaining another search warrant. Not surprisingly, the defendant cites no authority for this novel argument.

In *Lawmaster v. Ward,* 125 F.3d 1341 (10th Cir.1997), the Tenth Circuit made these observations concerning the propriety of the manner in which an officer executes a search warrant:

Although the Constitution does not specifically address how an officer should execute a search warrant, a warrant that is reasonably executed will withstand constitutional scrutiny. *See Dalia v. United States,* 441 U.S. 238, 257, 99 S.Ct. 1682, 1693, 60 L.Ed.2d 177 (1979). The Fourth Amendment provides individuals with security in their homes, and a search warrant, even one properly supported and properly issued, is not a license to breach that security with impunity. An officer's conduct in executing a search is subject to the Fourth Amendment's mandate of reasonableness from the moment of the officer's entry until the moment of departure. *Duncan v. Barnes,* 592 F.2d 1336, 1338 (5th Cir.1979). However, so long as the officer's conduct remains within the boundaries of reasonableness, an officer has discretion over the details of how best to proceed with a search warrant's execution. *See Dalia,* 441 U.S. at 257, 99 S.Ct. at 1693. Occasionally, such details include damaging property, detaining residents, or taking action necessary to protect the searching officers. *Id.* at 258, 99 S.Ct. at 1694; *Michigan v. Summers,* 452 U.S. 692, 705, 101 S.Ct. 2587, 2595–96, 69 L.Ed.2d 340 (1981); *Bills v. Aseltine,* 958 F.2d 697, 704 (6th Cir.1992). However, because the touchstone of the constitutionality of an officer's conduct during a search is reasonableness, when executing a search warrant, an officer is limited to conduct that is reasonably necessary to effectuate the warrant's purpose. *Ayeni v. Mottola,* 35 F.3d 680, 689 (2d Cir.1994), *cert. denied,* 514 U.S. 1062, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995); *Ginter v. Stallcup,* 869 F.2d 384, 388 (8th Cir.1989); *Tarpley v. Greene,* 684 F.2d 1, 9 (D.C.Cir.1982).

We note that whether an officer's conduct is reasonable is a highly fact-dependent inquiry that can only be determined on a case-by-case basis. *See Tarpley,* 684 F.2d at 9. Essentially then, we look to the totality of the circumstances to determine

whether the officer's conduct was reasonably necessary to effectuate the warrant's purposes. *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir.1993) ("Under the Fourth Amendment, the intrusiveness of a search or seizure will be upheld if it was reasonable under a totality of the circumstances.")

*Id.* at 1349.

█ The defendant's unsupported argument that officers needed a second search warrant in this case defies common sense, particularly in light of the facts and circumstances confronted by officers executing the search warrant. In this case the officers obtained a search warrant that authorized them to search, *inter alia*, for methamphetamine and items for the sale and/or use of methamphetamine. Based upon their previous search of the house, officers reasonably believed that methamphetamine was being manufactured at the residence. The chemicals and processes used in manufacturing methamphetamine pose a serious health risk. *See United States v. Jennings*, 83 F.3d 145, 152 n. 6 (6th Cir.) ("The manufacture of methamphetamine always includes use of dangerously toxic chemicals."), *as Amended on Denial of Rehearing and Rehearing en Banc*, 96 F.3d 799 (6th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 411, 136 L.Ed.2d 324 (1996). The fact that two officers prudently undertook a safety sweep or inspection of the residence prior to actually conducting the full search authorized by the warrant to insure the safety of all officers participating in the execution of the search does not mean that the search authorized by the warrant was terminated. The officers executing the search warrant did not conduct a second "warrantless" search when they entered the residence following the brief safety inspection by Officers Listrom and Voigt. The court finds that officers acted reasonably in the execution of the search warrant at Dighera's residence.

IT IS THEREFORE ORDERED that the defendant's "Motion to Suppress" (Dk.21) is denied.