**John EDMOND, et al., Appellants,**

v.

**UNITED STATES POSTAL SERVICE GENERAL COUNSEL, et al., Appellees.**

**No. 90–5071.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 6, 1991.

Decided Nov. 22, 1991.

Rehearing En Banc Denied Feb. 11, 1992.*

* See 952 F.2d 1173.

Pamela Lyles, pro se, for appellants.

John Oliver Birch, Asst. U.S. Atty., for appellees U.S. Postal Service General Counsel, et al. Jay B. Stephens, U.S. Atty., and John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief for the federal appellees. Mark E. Nagle, Asst. U.S. Atty., Washington, D.C., also entered an appearance for the federal appellees.

Ralph S. Tyler and Andrew H. Baida, Baltimore, Md., were on the brief for appellee Roger Wolf.

David P. Durbin and William M. Harter, Jr., Washington, D.C., were on the brief for appellee Arnold Popkin.

Before EDWARDS, RUTH BADER GINSBURG and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Separate opinion, concurring in part and dissenting in part, filed by Circuit Judge SILBERMAN.

HARRY T. EDWARDS, Circuit Judge:

John Edmond and Pamela Lyles were indicted and thereupon arrested for mail fraud. After the indictment was dismissed, they brought a constitutional tort action against Postal Service inspectors, United States and Maryland prosecutors, and private parties, claiming a conspiracy to violate their Fourth and Sixth Amendment rights. The District Court dismissed four defendants for lack of personal jurisdiction, then the tort claims as a matter of law. We reverse in part and remand. Two colorable tort theories were presented in the complaint and subsequent filings, but the District Court failed to address them. Appellants are also entitled to discovery on the question of personal jurisdiction, because they made specific and nonspeculative allegations that a conspiracy acted to cause them injury in the District of Columbia.

## I. BACKGROUND

In early 1986, United States Postal Service Inspector M. Sherwin Green began an investigation of Landover Contact Lens Center ("Landover"), a mail-order firm located in Maryland. John Edmond owned Landover; Pamela Lyles was Edmond's counsel, but she held no apparent ownership interest in the firm. Green's investigation eventually led to an administrative consumer protection proceeding initiated by the Maryland Office of Attorney General against Landover, a Postal Service action halting the delivery of mail to Landover and, finally, the arrest upon indictment of Edmond and Lyles.

On February 17, 1987, a federal grand jury in Maryland indicted John Edmond and Pamela Lyles for mail fraud. One day later, they were arrested at their Maryland residence by Postal Inspector Green, his supervisor Thomas Krautheim and other officers. It is undisputed that the arrest took place during the pre-dawn hours of February 18, 1987 [1]; that no arrest warrant was produced when Green and his cohorts entered appellants' residence; that, following their "arrest," Edmond and Lyles were first taken to a Postal Service office in Washington, D.C., where they were questioned and fingerprinted [2]; that an arrest warrant was not produced until the arrestees reached the office [3]; and that they were returned from Washington to the U.S. District Court in Maryland and held for nine hours (for which no explanation has been offered) before their bail hearing. [4] In addition, appellants claim that Edmond was taken from his residence in his bedclothes [5]; that Green verbally abused and humiliated them, and then attempted to prevent Edmond from wearing shoes as they left the residence [6]; that they were photographed at the Postal Service office [7]; and that the purpose of the procedures there was to

---

1. Memorandum in Support of Federal Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment at 7 ("Dismissal Motion"), Record Document No. 63.

2. Answer ¶ 29, *reprinted in* Appellants' Appendix ("App.") 36, 40. It is also admitted that Edmond and Lyles were "booked in accordance with normal procedures" at the Postal Service office. Dismissal Motion at 8.

3. Answer ¶ 27, *reprinted in* App. 36, 40.

4. Answer ¶ 29, *reprinted in* App. 36, 40.

5. Complaint ¶ 27, *reprinted in* App. 1, 13.

6. Complaint ¶ 27, *reprinted in* App. 1, 13.

7. Memorandum in Opposition to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment at 6 ("Opposition to Dismissal"), unnumbered record document (Apr. 19, 1989).

shore up Green's insubstantial case.[8] Finally, it is alleged that the named defendants conspired to "frame" Edmond and Lyles, and that Wendy Arnell, an Assistant United States Attorney for the District of Maryland, secured the indictment against Edmond and Lyles by using the perjured testimony of Richard Spitz, a businessman who had leased manufacturing facilities to Landover.[9]

After their arrest, Edmond and Lyles were released pending trial. Appellants then filed a motion to dismiss the indictment for prosecutorial vindictiveness. After the charge of vindictiveness was set for hearing, the prosecutor moved to dismiss the indictment, thus mooting the claim of vindictiveness.[10]

In February, 1988, Edmond and Lyles filed this action *pro se* in the District Court. They claimed false arrest and malicious prosecution pursuant to a racially-motivated conspiracy. The alleged conspirators, named as defendants, were Green, Krautheim, Arnell and Spitz; another Postal Service supervisor, Dewey Sparks; Spitz' lawyer Arnold Popkin; and Roger Wolf, a Maryland prosecutor who apparently was involved in the consumer protection proceedings against Edmond. The government employees were sued both officially and individually, and the United States Postal Service General Counsel was sued as well. Suit was predicated on a number of constitutional amendments; on 42 U.S.C. §§ 1983 and 1985; on Maryland law; and on 15 U.S.C. § 1681 (Fair Credit Reporting Act) and 12 U.S.C. § 3408 (Right to Financial Privacy Act), for Green's alleged misuse of credit information.

The case never went to trial or even discovery. When appellants attempted to depose Spitz and Popkin, the District Court granted a protective order. Soon thereafter, in April, 1988, these two defendants were dismissed for lack of personal jurisdiction. In September, 1988, Roger Wolf

was dismissed on the same grounds, and the court also dismissed "all nonconstitutional tort claims actionable under the Federal Tort Claims Act," Order at 2–3, *reprinted in* App. 61, 62–63, but the federal officials remained as defendants to the constitutional causes of action. However, the trial court had stayed discovery at the same time Spitz and Popkin were dismissed, and this stay remained effective throughout the proceedings.

In April, 1989, appellants moved to rename Spitz and Popkin, supporting their motion with a crucial affidavit by Dr. Joseph Serian. *See* Declaration of Dr. Joseph S. Serian ("Serian Affidavit"), *reprinted in* App. 91. Serian, a former client of Pamela Lyles, assertedly was telephoned by Spitz, Popkin and Green during the Landover investigation. The Serian Affidavit states that "[e]ach of the telephone calls was characterized by extremely vicious and hostile comments.... Popkin and Spitz repeatedly called Pamela Lyles and John Edmond 'thieving niggers.' " Green, Popkin and Spitz "repeatedly stated that they were determined to put Pamela Lyles and John Edmond behind bars," and "admitted that they had no evidence to prove any crime had been committed" by the two. Finally, the Serian Affidavit asserts that the three appellees "begged [Serian] to help them by giving perjurious testimony which could convict" appellants, and "Spitz indicated that he had presented false testimony to the grand jury which indicted" Edmond and Lyles. Serian Affidavit at ¶¶ 8–9, *reprinted in* App. 91, 92–93.

The District Court never explicitly ruled on the motion to rename Spitz and Popkin. Rather, by Memorandum of Opinion and Order dated November 14, 1989 ("Memorandum Opinion"), 727 F.Supp. 7, *reprinted in* App. 65, Wendy Arnell was dismissed for lack of personal jurisdiction; the federal officers were dismissed in their official capacities; and dismissal was ordered on

---

**8.** Complaint ¶ 36, *reprinted in* App. 1, 16; [Plaintiffs'] Statement of Genuine Issues ¶ 6, Record Document No. 81.

**9.** Complaint ¶¶ 22–23, *reprinted in* App. 1, 11–12.

**10.** Complaint ¶¶ 37–38, *reprinted in* App. 1, 16; Answer ¶¶ 37–38, *reprinted in* App. 36, 40.

all the constitutional tort claims. Only the Fair Credit Reporting Act claim against Green remained pending, and he was subsequently granted summary judgment on January 31, 1990. On the same day, the trial court also denied a motion by Edmond and Lyles to amend the judgment of November 14, 1989. Order Re Plaintiffs' Motion to Amend Judgment, *reprinted in* App. 85.

In dealing with appellants' Fourth Amendment claims, the trial court's Memorandum Opinion focuses exclusively on a so-called "Probable Cause" theory of the case, which is what the Government had focused on in moving for dismissal. In pressing this point, the Government asserted that "the 'seizure' of plaintiffs, *i.e.*, their arrest, was by their own admission based on indictments. Therefore, probable cause had already been found to exist and the Complaint fails to state a claim under the Fourth Amendment." Dismissal Motion at 29; *see also id.* at 39. The District Court apparently accepted this characterization of the Fourth Amendment claims and, accordingly, dismissed the Fourth Amendment claims on this sole ground:

> Although every person has the constitutional right to be free from arrest or detention without probable cause, the finding of an indictment, fair upon its face, by a properly constituted grand jury conclusively determines the existence of probable cause to arrest. Probable cause exists *even if* the indictment is based on unreliable, incompetent or even perjured testimony.

Memorandum Opinion at 7 (citation omitted), *reprinted in* App. 65, 71. The trial court did acknowledge the "factual material" in the Serian Affidavit, but found it to be "vague" with respect to allegations of wrongdoing under a Probable Cause theory. Memorandum Opinion at 8 n. 13, *reprinted in* App. 65, 72.

In thus finding that appellants' "fourth amendment claims fail as a matter of law," Memorandum Opinion at 8, *reprinted in* App. 65, 72, the trial court completely failed to address two additional, and distinct, theories of the case that had been raised in appellants' complaint, in other related documents and in "factual material" (such as the Serian Affidavit). One of these theories, which might be called Perjurer's Liability, asserts that someone who causes an indictment and consequent arrest by perjuring himself or arranging for the submission of perjured testimony before the grand jury violates the Fourth Amendment. In their claims before the trial court, appellants clearly raised this theory in contending that the alleged conspirators caused them to suffer a wrongful arrest by effecting perjury before the Maryland grand jury, upon whose indictment the arrest warrants issued.

The second theory, which might be called Detour-and-Delay, rests on an assertion that the *manner* in which an arrest was accomplished was unlawful. Appellants raised this theory before the trial court in asserting, *inter alia*, that Edmond and Lyles were humiliated by the arresting officers, taken on a detour from Maryland to Washington and back again, and held for more than nine hours without good cause before their bail hearing.

Although the Perjurer's Liability and Detour-and-Delay theories of liability were pursued by appellants before the District Court, these claims were totally ignored in the trial court's Memorandum Opinion. And these two theories were again ignored in the court's Order Re Plaintiffs Motion to Amend Judgment (Jan. 31, 1990), *reprinted in* App. 85.

After an unfavorable judgment was entered, Edmond and Lyles filed a timely appeal *pro se*. The theories they present to this court are Perjurer's Liability and Detour-and-Delay. These theories are given a Fourth Amendment rubric, and appellants also preserve their contention that the arrest of Lyles (Edmond's counsel) violated his Sixth Amendment rights. Appellants conceded at oral argument that no other constitutional claims and no statutory or common law claims are raised for review. The only other issue remaining on appeal is whether the District Court should have dismissed Spitz, Popkin, Arnell and Wolf for lack of personal jurisdiction without afford-

ing appellants an opportunity to discover jurisdictional facts.

## II. ANALYSIS

### A. *The Fourth Amendment Issues*

#### 1. *Introduction: The Posture of This Appeal*

■ This appeal comes to us in a curious posture. During oral argument before this court, Government counsel conceded that the so-called Perjurer's Liability and Detour-and-Delay theories may raise causes of action cognizable under the Fourth Amendment; counsel also conceded that appellants' complaint embraces both theories of action and, therefore, the case could not properly be dismissed on a 12(b)(6) motion[11] for failure to state a cause of action. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) ("In appraising the sufficiency of the complaint we follow ... the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."); *Lujan v. National Wildlife Fed'n*, — U.S. —, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990) ("[A] Rule 12(b) motion to dismiss on the pleadings ... presumes that general allegations embrace those specific facts that are necessary to support the claim.").

Furthermore, there is no doubt that the District Court never even purported to address the Perjurer's Liability and Detour-and-Delay theories that had been advanced by appellants. The Government conceded this point as well during oral argument. Thus, it cannot be asserted that the trial court somehow granted "summary judgment" against appellants on the substance

of these theories—the theories were never addressed.

Recognizing this inherent weakness in its case, the Government argued before this court that, although the complaint raised the Perjurer's Liability and Detour-and-Delay theories, Edmond and Lyles thereafter pursued only the Probable Cause theory before the District Court, thereby waiving review of the other two theories. For the reasons set forth below, we reject this contention. We find that appellants raised and did not abandon or relinquish the disputed theories; therefore, we reverse and remand for further consideration of these issues.

#### 2. *Appellees' Claim of Waiver Regarding the Fourth Amendment Issues*

As noted above, in considering appellees' claim of waiver, it is important to keep this appeal in proper focus. Appellants seek review on two theories of liability that were concededly raised in their complaint; however, the District Court never addressed the claims that are now the subject of our inquiry on appeal. Under these circumstances, "[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Appellees seek to avoid application of this rule with their assertion that appellants abandoned, or otherwise waived, the disputed claims by failing to pursue them during the course of the proceedings before the trial court. We reject this argument.

The complaint clearly alleged that appellees used perjury to secure the indictment and thereupon the arrest of Edmond and Lyles.[12] And in opposing dismissal, appellants clearly argued that these facts made out a cause of action under the Fourth

---

**11.** FED.R.CIV.P. 12(b)(6).

**12.** [Arnell] suborned the false testimony of defendant Spitz and presented said false testimony to a grand jury impaneled in the U.S. District Court for the District of Maryland.... ... Arnell and Green made intentionally false representations to said grand jury....
....

By reason of the defendants' false representations the grand jury, on February 17, 1987, returned an indictment against the plaintiffs ..., which indictment charged both plaintiffs with the crime of mail fraud.

In the early morning hours of February 18, 1987, [Edmond and Lyles were arrested]. Complaint ¶¶ 22–23, 26–27, *reprinted in* App. 1, 11–13.

Amendment. Although the relevant section of the opposition was entitled "Plaintiffs' Fourth Amendment Claim—Arrest Without Probable Cause," the main theory presented there was actually Perjurer's Liability.

> [I]t is clear that defendants were part of a conspiracy. The general plan, as stated by defendant Green, Popkin and Spitz was to put plaintiffs behind bars. In furtherance of the conspiracy defendant Green exchanged information with Popkin and Spitz, ... suborned perjury and happily carried out the illegal arrest and imprisonment of plaintiffs, knowing there was no evidence that they had committed any crime.

Opposition to Dismissal at 9, 14. To be sure, appellants' presentation was often confused. But their emphasis was surely on the fact that the alleged conspirators had *themselves* participated in the perjury. The argument-in-chief was *not* Probable Cause: that Green *et al.* would be liable for arresting upon an indictment rooted in perjured testimony, whatever their role in the grand jury proceedings. Rather, appellants evidently used the words "probable cause" to describe the right that the conspirators had caused to be violated: the right to have some true factual predicate, not perjury, as the basis for their arrest.

Nor did appellants waive the second Fourth Amendment theory, Detour-and-Delay. Even if the *fact* of their arrest was not unlawful, they argue, the *manner* of that arrest violated the Fourth Amendment. Again, this theory's factual basis was plainly asserted in the complaint.

> In the early morning hours of February 18, 1987, defendants Green and Krautheim came to plaintiffs residence in the company of several armed postal inspectors and police officers and arrested the plaintiffs. Defendant Green was laughing and smiling during said arrest and attempted to prevent plaintiff John Edmond from putting on his shoes in hopes that plaintiff would be required to walk barefoot in the snow. Fortunately, another postal inspector intervened and allowed the plaintiff to put his shoes on although the plaintiff was required to accompany the defendants in his bedclothes.

> Upon inquiry by plaintiff Pamela Lyles, the defendants Green and Krautheim did not produce an arrest warrant during said arrest in hopes of provoking the plaintiffs into resisting arrest....

> Plaintiffs were transported to the U.S. Postal Service offices located at 900 Brentwood Road, N.E., Washington, D.C., questioned and fingerprinted and then taken to the U.S. District Court for the District of Maryland where they were incarcerated for nine hours before being brought before Magistrate Rosenberg.

Complaint ¶¶ 27–29, *reprinted in* App. 1, 13–14. The Opposition to Dismissal cited these facts in describing how Edmond and Lyles were harmed by their arrest:

> The injury which plaintiffs sustained as a result of defendants' wrongful conduct is readily apparent. Plaintiffs were not only roused from their beds at gunpoint pursuant to an illegally obtained indictment, they were effectually kidnapped and taken from the State of Maryland into the District of Columbia for the sole purpose of obtaining plaintiffs' fingerprints and mug shots by hostile, vindictive adversaries.

Opposition to Dismissal at 16.

■ Although appellants did not precisely argue Detour-and-Delay in the alternative to Perjurer's Liability, that was surely an obvious reading of their case. The claim that they were arrested in an unlawful manner was obviously separable from the claimed illegality in the very fact of arrest, and the District Court was obliged to consider Detour-and-Delay as a separate theory. *See Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466–67 (9th Cir.1990) (reversing summary judgment where trial court failed to consider theory of liability that was combined with another in plaintiff's opposition). The days are long over when misnomer legitimately could occasion dismissal of a plea.

■ However tempting it might be to require utter clarity when parties plead and

argue before our courts, the very concept of an "inartful pleading" or motion belies the existence of such a requirement. "There is no bright-line rule to determine whether a matter has been properly raised" in moving papers, *In re E.R. Fegert, Inc. (O'Rourke v. Seaboard Sur. Co.)*, 887 F.2d 955, 957 (9th Cir.1989); and when a plaintiff's opposition is "less than paradigmatic, ... the question becomes one of sufficiency, *i.e.*, whether in light of the policies behind the rule of waiver plaintiff sufficiently raised the issue below so that waiver should not apply," *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1221 (7th Cir.1984) (rejecting argument that, because plaintiffs did not file opposing affidavit in response to defendant's motion for summary judgment, plaintiff had waived issue on appeal). The waiver "policy," of course, encourages parties to communicate with each other and the trial judge; in the instant case, the communication was surely audible. Even the most passive listener could hardly have failed to hear appellants' plea: in their own words, that they were "effectually kidnapped." In short, they did enough to state and preserve for further airing a claim pursuant to the Detour-and-Delay theory.

■ It is also important to recall that the District Court did *not* grant summary judgment against appellants on either the Perjurer's Liability or the Detour-and-Delay theory; nor did the trial court suggest that these theories of liability had been waived or abandoned. The theories were never addressed because appellants' case was incorrectly characterized in the Memorandum Opinion; consequently, there was no actual judgment on the points here in issue. The burden was on the defendants who moved for summary judgment to establish that Edmond and Lyles had no claim as a matter of law. As defendants never addressed these theories before the District Court, dismissal was clearly improper.

Indeed, given the posture of the case before the trial court at the time of dismissal, it is inconceivable that appellants' claims on Perjurer's Liability and Detour-and-Delay could have been disposed of pursuant to summary judgment. The Serian Affidavit, alone, raised substantial and disputed "factual material," Memorandum Opinion at 8 n. 13, *reprinted in* App. 65, 72, supporting the Perjurer's Liability theory; and, whatever the trial court may have thought about the affidavit with respect to the Probable Cause theory, it surely could not be disregarded as being too "vague," *see id.*, with respect to a claim under Perjurer's Liability. As for the Detour-and-Delay claim, the complaint, along with Edmond's affidavit, the opposition to dismissal filed by appellants, plus the Government's failure to deny or account for the extraordinary episode underlying appellants' claim, militate against summary judgment for appellees. In short, on both theories, appellants dramatically set forth specific, highly uncommon facts and adequately indicated viable legal claims. *See* FED.R.CIV.P. 56(e). The unanswered and grave allegations made should have survived the motion for summary judgment.

In sum, appellees' waiver argument is wholly unavailing. The record belies any contention that appellants abandoned the aforementioned theories of liability so plainly springing from their complaint. Both of the theories presented on appeal were adequately raised and preserved below.[13]

### 3. *The Fourth Amendment Issues to Be Faced on Remand*

In rejecting appellees' so-called waiver argument, we have pointed out that Perjur-

---

13. This is not a case like *Tarpley v. Greene*, 684 F.2d 1 (D.C.Cir.1982), where "[a]t oral argument on appeal, counsel for appellant raised a new argument." *Id.* at 7 n. 17. Because appellant had "not articulate[d] this argument before the District Court, let alone present[ed] evidence to support it[,] ... the District Court never addressed the argument in disposing of the motions for summary judgment." *Id.* In such a circumstance, we held in *Tarpley* that "[i]t is not the task of this court to consider all of the implications of a theory vaguely raised for the first time at oral argument on appeal and to search the record for supporting evidence." *Id.* In this case, appellants' theories of the case were raised and pursued before the District Court and then preserved on appeal. Because the District Court never addressed the theories, the proper course is remand.

er's Liability is a valid constitutional tort theory, as appellees conceded at oral argument. The Supreme Court's reasoning in *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), would appear to settle that question.[14] Appellees also conceded that Detour-and-Delay states a constitutional tort claim. This theory is arguably cognizable under the Fourth Amendment, although, in a case of this sort, it may be better articulated under the Fifth Amendment (because Edmond and Lyles already had been indicted at the time of alleged wrongdoing). *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).[15] These issues should be considered on remand.[16]

## B. *The Sixth Amendment Issue*

■ On remand, the District Court should also reexamine appellants' Sixth Amendment claim: that the wrongful arrest of Pamela Lyles violated Edmond's right to counsel. The trial court held:

> The record in no way demonstrates ... that Mr. Edmond did not have the assistance of counsel at a critical stage of prosecution....[15]

[15] Plaintiff's reliance on *United States v. Morrison*, 449 U.S. 361[, 101 S.Ct. 665, 66 L.Ed.2d

564] (1981), *reh'g denied*, 450 U.S. 960[, 101 S.Ct. 1420, 67 L.Ed.2d 385] (1981), as extending the sixth amendment to an "interference" situation is misplaced. The Supreme Court in *Morrison* expressly refused to decide whether a sixth amendment right was violated.

Memorandum Opinion at 9 & n. 15, *reprinted in* App. 65, 73. Although *Morrison* did indeed leave open the question whether alleged interference with the right to counsel states a constitutional tort claim, *see* 449 U.S. at 367, 101 S.Ct. at 669, this court has given an affirmative answer to the question.

The threat of significant harm required by *Weatherford [v. Bursey*, 429 U.S. 545 [97 S.Ct. 837, 51 L.Ed.2d 30] (1977),]* does not, however, have to amount to 'prejudice' in the sense of altering the actual outcome of the trial. Although the Sixth Amendment is concerned primarily with fairness at trial, it is not limited to that function. The right to counsel protects the whole range of the accused's interests implicated by a criminal prosecution. These interests may extend beyond the wish for exoneration to include, for example, the possibilities of a lesser charge, a lighter sentence, or the alleviation of the practical burdens of a trial.

*mon v. Lumpkin County*, 878 F.2d 1406, 1409 & n. 2 (11th Cir.1989) (citing *Rodriguez*).

**14.** *Malley* was a § 1983 false arrest case where arrest was pursuant to a judicial warrant. The Court noted:

> Petitioner has not pressed the argument that in a case like this the officer should not be liable because the judge's decision to issue the warrant breaks the causal chain between the application for the warrant and the improvident arrest. It should be clear, however, that the District Court's 'no causation' rationale in this case is inconsistent with our interpretation of § 1983. As we stated in *Monroe v. Pape*, 365 U.S. 167, 187[, 81 S.Ct. 473, 484, 5 L.Ed.2d 492] (1961), § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."

475 U.S. at 344 n. 7, 106 S.Ct. at 1098 n. 7. *See also Jones v. City of Chicago*, 856 F.2d 985, 993–94 (7th Cir.1988) (grand jury indictment does not preclude perjurer's liability for subsequent false arrest); *Hand v. Gary*, 838 F.2d 1420, 1427–28 (5th Cir.1988) (same). *But see Rodriguez v. Ritchey*, 556 F.2d 1185, 1190–92 (5th Cir.1977) (en banc) (plurality opinion) (indictment precludes liability), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978); *Gar-*

**15.** "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate ... the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee." 441 U.S. at 535, 99 S.Ct. at 1872.

**16.** In their filings below and before this court, appellants have presented Detour-and-Delay as a Fourth rather than Fifth Amendment theory. Since their basic claim (that they were wrongly treated by the arresting officers) is the same, whether that treatment is styled an unlawful seizure under the Fourth Amendment or a deprivation of substantive due process under the Fifth, and since the constitutional location of such a claim remains an unsettled, technical issue, *see Wilkins v. May*, 872 F.2d 190, 192–95 (7th Cir.1989), *cert. denied sub nom. Wilkins v. McDaniel*, 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990), Edmond and Lyles should be free to advance a Fifth Amendment claim if one is properly asserted and pursued on remand.

*Briggs v. Goodwin,* 698 F.2d 486, 494 (D.C.Cir.) (citations and internal quotations omitted) (citing *Morrison*), *vacated on reh'g on other grounds,* 712 F.2d 1444 (D.C.Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984).[17]

■ If Edmond had not alleged that he was arrested in a wrongful manner, then the only apparent injury to him from Lyles' arrest would have been emotional, and we would have to decide whether emotional injury, without more, is "significant harm" under *Briggs. See Cinelli v. City of Revere,* 820 F.2d 474, 477–78 (1st Cir.1987), *cert. denied sub nom. Cutillo v. Cinelli,* 485 U.S. 1037, 108 S.Ct. 1600, 99 L.Ed.2d 915 (1988); *Briggs,* 698 F.2d at 494 n. 24. In this case, however, appellants have asserted more than just emotional injury. They have contended that, because of her arrest, Lyles was unable to serve her client, presumably by preventing his detour to the Postal Service office in the District of Columbia and the ensuing delay in his bail hearing, and that these and other alleged indignities "significantly harmed" him in connection with the practical burdens related to the proposed prosecution against him. The District Court failed to consider this Sixth Amendment theory, and should do so on remand.

### C. *Personal Jurisdiction*

■ Appellants assert personal jurisdiction over Richard Spitz, Arnold Popkin, Wendy Arnell and Roger Wolf based on section 13–423(a)(3) of the D.C. long-arm statute.

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

.     .     .     .     .

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia....

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C.Code Ann. § 13–423(a)(3) (1989). Even though subject-matter jurisdiction is here predicated upon a federal question, Edmond and Lyles must rely on D.C. law to sue nonresident defendants, since no federal long-arm statute applies. *See Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *First Chicago Int'l v. United Exch. Co.,* 836 F.2d 1375, 1377–79 (D.C.Cir.1988) (using D.C. long-arm statute in federal question case). Edmond and Lyles have the burden of proving personal jurisdiction, and can satisfy that burden with a *prima facie* showing, *see, e.g., First Chicago,* 836 F.2d at 1378, unless the trial court holds an evidentiary hearing, *see Reuber v. United States,* 750 F.2d 1039, 1052 (D.C.Cir.1984).

■ Appellants point to their temporary incarceration in the District of Columbia as the tortious event necessary to satisfy the requirements of section 13–423(a)(3). There is no evidence that Spitz, Popkin, Wolf and Arnell directly participated in this event. Rather, Edmond and Lyles argue that these four appellees participated through the agency of their co-conspirators Green and Krautheim, who were arresting officers, and that this indirect participation satisfies the proviso of section 13–423(a) allowing "personal jurisdiction over a person, who acts ... by an agent."[18] We do

---

**17.** Although vacated because of an intervening Supreme Court decision covering immunity, the *Briggs* opinion retains precedential weight on other issues. *See Action Alliance of Senior Citizens v. Sullivan,* 930 F.2d 77, 83–84 (D.C.Cir. 1991), *cert. denied,* — U.S. —, 112 S.Ct. 371, 116 L.Ed.2d 323 (1991); *Hopkins v. Price Waterhouse,* 920 F.2d 967, 975 n. 5 (D.C.Cir.1990). Indeed, this circuit has more than once cited *Briggs* as authority for legal propositions that were not disturbed by the decision on rehearing. *See Martin v. Malhoyt,* 830 F.2d 237, 256 (D.C.Cir.1987); *Halperin v. Kissinger,* 807 F.2d 180, 187 (D.C.Cir.1986); *Attorney Gen. of the United States v. Irish People, Inc.,* 796 F.2d 520, 524 (D.C.Cir.1986).

**18.** Edmond and Lyles also allege that Arnell sent a defamatory letter into the District of Columbia, but this allegation, even if true, would not, in itself, satisfy section 13–423(a)(3), *see, e.g., Moncrief v. Lexington Herald–Leader Co.,* 807 F.2d 217, 219–21 (D.C.Cir.1986).

not decide whether Edmond and Lyles have indeed made a *prima facie* showing of personal jurisdiction under section 13–423(a)(3), but instead remand for discovery on that question.

As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction. *See Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 788 (D.C.Cir.1983), *cert. denied sub nom. Naartex Consulting Corp. v. Clark,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984); *see generally Wyatt v. Kaplan,* 686 F.2d 276, 283–84 (5th Cir.1982) (Wisdom, J.). At the same time, a district court has broad discretion in structuring discovery, and we should not overturn the District Court's decision to stay discovery against Popkin, Wolf, Arnell and Spitz unless this discretion has been abused. *See Naartex,* 722 F.2d at 788. In *Naartex,* where jurisdiction over nonresident defendants hinged on an alleged conspiracy, and where the allegations of conspiracy were conclusory, we upheld the denial of discovery. The allegations here, however, are far from conclusory, and the District Court's protective orders are appropriately reversed. *See Crane v. Carr,* 814 F.2d 758 (D.C.Cir.1987) (remanding for jurisdictional discovery, where district court had dismissed for lack of personal jurisdiction); *Collins v. New York Cent. Sys.,* 327 F.2d 880 (D.C.Cir.1963) (same).

■ To be sure, this court in *Naartex* spoke of "specific [alleged] facts that could establish the requisite contacts with the District," 722 F.2d at 788, as the prerequisite for a jurisdictional-discovery remand. But the plain language of this test does not demand that a contact be specifically alleged for each nonresident defendant, nor did *Naartex* mean to make such a demand. Furthermore, even assuming that due process requires the nonresident to have

known about and assented to the alleged injury-causing act, the plaintiff need not specifically allege this *mens rea* to obtain discovery because the nonresident's participation in the conspiracy entails a significant probability that he did know and assent. Otherwise, the existence of a conspiracy would be wholly superfluous to the discovery calculus, and *Naartex* surely does not intend *that.*

■ We do not at this stage attempt to address the limits on the use of conspiracy theory to establish personal jurisdiction.[19] Whatever those limits, it is an abuse of discretion to deny jurisdictional discovery where the plaintiff has specifically alleged: (1) the existence of a conspiracy, (2) the nonresident's participation, and (3) an injury-causing act of the conspiracy within the forum's boundaries.

■ Appellants have the strongest jurisdictional case against Spitz and Popkin. The Serian Affidavit, connecting Spitz and Popkin with Green, is enough to require jurisdictional discovery against Spitz and Popkin. Although the affidavit was introduced subsequent to their dismissal, the District Court had the authority to reverse its own interlocutory order, *see* 11 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2852, at 145 (1973); *Laffey v. Northwest Airlines,* 642 F.2d 578, 583–84 (D.C.Cir.1980), and its failure to do so was an abuse of discretion.[20]

The Serian Affidavit does not mention Wendy Arnell. Nor would the allegation that she suborned perjury and made false representations to the grand jury be sufficient for this court to overrule the denial of discovery against her. These allegations are not conclusory, but they are speculative: appellants have no apparent basis for direct knowledge of Arnell's state of mind, nor do they have any basis for direct knowledge that Arnell prosecuted their in-

**19.** *See* Ann Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis,* 52 FORDHAM L. REV. 234 (1983); Stuart M. Riback, Note, *The Long Arm and Multiple Defendants: The Conspiracy Theory of In Personam Jurisdiction,* 84 COLUM.L.REV. 506 (1984).

**20.** Abuse-of-discretion is the appropriate standard for reviewing the denial of a motion to reverse an interlocutory order, *see Segar v. Smith,* 738 F.2d 1249, 1285 (D.C.Cir.1984), *cert. denied sub nom. Meese v. Segar,* 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985).

dictment. However, circumstantial evidence suggests she *was* the prosecutor: appellees admit her connection to the Postal Service investigation and subsequent civil proceedings,[21] and Edmond and Lyles make specific and nonspeculative allegations of her participation in criminal proceedings related to the indictment.[22] Given this evidentiary background, the (apparently admitted) fact[23] that Arnell dismissed the indictment prior to trial, after a hearing on prosecutorial vindictiveness had been scheduled, should have led to jurisdictional discovery against Arnell. If the Serian Affidavit is true, and Green *et al.* were indeed conspiring against appellants, Arnell's decision to dismiss the indictment would be nontrivial evidence of her participation in the conspiracy. Added to this were the allegations that Arnell had threatened to indict Edmond if he filed for bankruptcy,[24] and that she mocked appellants during the bail hearing,[25] plus the undisputed fact that Arnell had informed the D.C. Bar Counsel about the indictment but failed to communicate its dismissal.[26] It was therefore an abuse of discretion for the District Court to dismiss Wendy Arnell without jurisdictional discovery.[27]

█ The denial of discovery against Roger Wolf is a much closer question. Appellants make numerous allegations about Wolf, for example, that he "knowingly made false statements to reporters"; "knowingly and maliciously suborned perjury by procuring perjured testimony from" Spitz in the Maryland proceeding; "concealed from the [Maryland] hearing officer documents which would have contradicted" Spitz; and, in a bankruptcy action Edmond had filed, "sought to obtain [Edmond's] financial records while knowing full well that [Edmond] had not been served with" a subpoena and "falsely stated to [the bankruptcy judge] that the release of [Edmond's] financial records by [his] financial institutions was not imminent." Complaint ¶¶ 10–11, 13, 50, 53, *reprinted in* App. 1, 7–9, 20. However, these allegations are telling evidence of Wolf's status as a co-conspirator only if the speculation about *mens rea* is taken as true—only if Edmond and Lyles are assumed to know Wolf's state of mind. Stripped of this speculative element, the

---

21. Green informed Arnell about his investigation, and she was involved in obtaining preliminary court orders against the delivery of mail to Landover. [Federal Defendants'] Statement of Material Facts as to Which Is No Genuine Issue ¶¶ 6, 12–13, Record Document No. 63; *see also* Declaration of [Assistant United States Attorney] Gregg L. Bernstein ¶ 2, Record Document No. 87 ("Following the resignation of [Arnell] ..., I was assigned primary responsibility for an investigation [of Edmond and Lyles] initiated by [her]....") (filed subsequent to Arnell's dismissal). Arnell apparently made a declaration in connection with this litigation, *see* [Federal Defendants'] Statement of Material Facts as to Which There Is No Genuine Issue ¶¶ 6–7, Record Document No. 37, but it does not appear in the record.

22. Arnell allegedly told Edmond she would secure an indictment if he filed for bankruptcy. Complaint ¶ 8, *reprinted in* App. 1, 6. She apparently subpoenaed Landover on behalf of the grand jury. *See* [Plaintiffs'] Exhibit "B" at 4–5, Record Document No. 90/91 (purported copy of Government's opposition to motion to dismiss indictment). She allegedly participated in the bail hearing. Complaint ¶ 31, *reprinted in* App. 1, 14. She admittedly informed the D.C. Bar Counsel about the indictment. Answer at 10, ¶¶ 2–3, 7, *reprinted in* App. 36, 45; *see also*

[Plaintiffs'] Exhibit D (attached to Opposition to Dismissal) (purported copy of letter). Finally, Arnell apparently signed an opposition to appellants' motion to dismiss the indictment. *See* [Plaintiffs'] Exhibit "B" at 14, Record Document No. 90/91.

23. *See* Answer ¶¶ 37–38, *reprinted in* App. 36, 40; Answer at 10, ¶ 7, *reprinted in* App. 36, 45.

24. Complaint ¶ 8, *reprinted in* App. 1, 6.

25. "While sitting in the courtroom I saw Green and Assistant U.S. Attorney Wendy Arnell turn around and look at me. Arnell asked who I was and I heard Green tell her I was Pamela Lyles' sister. Arnell immediately stood up threw her head into the air and loudly stated that she had to go to the bathroom because it felt as if her contact lens was loose. Green then said 'Wendy, that's puny.' They both began to laugh...." Declaration of Sharon Lyles ¶ 6 (attached to Opposition to Dismissal).

26. Answer at 10, ¶¶ 2–3, 7, *reprinted in* App. 10.

27. We do not decide whether Arnell has immunity. The issue is not before this court. She will, of course, have the opportunity to raise it on remand.

allegations (if true) prove only that Wolf made misstatements and procedural mistakes while proceeding against appellants.

To be sure, the District Court could have allowed discovery against Wolf under the "freely permitted" standard of Rule 26. But the denial of discovery was not an abuse of discretion, in the absence of specific and nonspeculative allegations linking Wolf to the conspiracy. Accordingly, we affirm the judgment of the District Court as to Wolf.

## III. CONCLUSION

The constitutional claims predicated on appellants' arrest are reinstated. Richard Spitz, Arnold Popkin and Wendy Arnell are renamed as parties, and discovery permitted against Spitz, Popkin and Arnell limited to the question of personal jurisdiction.

There is one further point that deserves mention. When this case returns for further proceedings before the District Court, appellants will be well advised to seek the services of counsel to prosecute their claims. We recognize that Ms. Lyles is an attorney. We do not mean to judge her performance in suggesting that new counsel, in lieu of *pro se* representation, might be advisable; nor do we mean to ignore the fact that appellants may not be able to afford the expense of legal representation. It seems clear, however, that it would be difficult for any attorney in Ms. Lyles' shoes to be appropriately detached in a case of this sort, where her personal stake in the outcome is so great. We think that, assuming that appellants are able to retain counsel, some of the difficult issues yet to be faced might be better addressed with the assistance of an attorney who has no direct stake in the outcome of the litigation.

SILBERMAN, Circuit Judge, concurring in part and dissenting in part:

This case raises two important questions regarding pleading requirements. The first involves the particularity with which facts must be alleged to establish personal jurisdiction under the "conspiracy theory." I concur in large part with the majority's treatment of this issue but dissent from its conclusion as to appellees Popkin and Spitz because I think the district court was well within its discretion in refusing to reconsider its dismissal of those two appellees, despite the late submission of the Serian Affidavit.

The second question relates to the responsibility of litigants to bring their legal theories before the district court in their pleadings on a motion for summary judgment. I agree with the majority that appellants John Edmond and Pamela Lyles properly presented their Sixth Amendment claim, their Perjurer's Liability Fourth Amendment claim, and what I will call their Unlawful Booking Fourth Amendment claim to the district court in opposition to summary judgment, and I agree that the district court wrongly decided those claims. I do not believe, however, that Edmond and Lyles properly raised the Detour-and-Delay Fourth Amendment theory before the district court, and I think that precedent and respect for the district court require us to hold that they therefore abandoned that claim.

In short, I concur in my colleagues' reversal of the district court's errors, but I disagree with their willingness to overlook appellants' mistakes.

## I.

Whatever the statutory[1] and constitu-

1. We have not yet been told by the District of Columbia Court of Appeals—whose interpretations of the D.C. long-arm statute are of course binding—whether § 13–423(a)(3) encompasses the conspiracy theory or even whether that provision extends to the limits of due process. *See Mouzavires v. Baxter,* 434 A.2d 988, 991 (D.C.1981) (en banc) (per curiam) (expressly reserving the latter question), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982).

Nor have the Maryland or Virginia courts addressed the conspiracy theory under those states' long-arm statutes, *see, e.g., Poole & Kent Co. v. Equilease Assocs. I,* 71 Md. App. 9, 18, 523 A.2d 1018, 1023 (1987) (reserving the question), which are analogous to the District's, *see Margoles v. Johns,* 483 F.2d 1212, 1215–16, 1220–21 (D.C.Cir.1973) (looking to Maryland and Virginia decisions when no D.C. decisions were available).

tional[2] limits of the "conspiracy theory" of personal jurisdiction under section 13–423(a)(3) of the D.C. long-arm statute, D.C.CODE ANN. § 13–423(a)(3), our cases clearly require unusually particularized pleading of each of the three elements of the theory identified by the majority: the existence of a conspiracy, the nonresident's participation in the conspiracy, and the injury-causing act in the District in furtherance of the conspiracy. *See* Maj.Op. at 425. Our leading case, *Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C.Cir. 1983), rejected "bald speculation" and "conclusionary statement[s]" of conspiracy and stated that " 'a plaintiff must allege *specific facts* connecting [the] defendant with the forum.' " *Id.* at 787–88 (quoting *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n. 5 (9th Cir.1980) (emphasis added)), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984); *see also First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378–79 (D.C.Cir.1988) (rejecting jurisdiction when there was "no *concrete evidence in the record* indicating that there was a common plan ... to [commit the alleged tort] and [that the defendants] conspired and acted to further that plan" (emphasis added)); *Reuber v. United States*, 750 F.2d 1039, 1050 (D.C.Cir.1984) (rejecting jurisdiction when plaintiff had "not alleged a specific tortious act in the District by *any* of the alleged co-conspirators" (emphasis in original)). Indeed, in every one of the conspiracy theory cases in this circuit since *Naartex*, the district court has found the pleadings insufficient to sustain jurisdiction. *See, e.g., McManus v. Washington Gas Light Co.*, No. 90–3169, 1991 WL 222345, at *2–*3, 1991 U.S.Dist. LEXIS 14539, at *4–*8 (D.D.C. Oct. 15, 1991); *Hasenfus v. Corporate Air Servs.*, 700 F.Supp. 58, 62 (D.D.C.1988). *But cf. Mandelkorn v. Patrick*, 359 F.Supp. 692, 695–97 & n. 5 (D.D.C.1973) (pre-*Naartex*

case allowing jurisdiction based on "general" allegations of conspiracy where those allegations were uncontroverted and thus could be assumed true). And we are not much, if any, more lenient when deciding whether a district court properly denied plaintiffs' request for discovery to flesh out their allegations. We review the district court's decision, after all, only for abuse of discretion. *See Naartex*, 722 F.2d at 788 (affirming a denial of discovery when "the pleadings contained no allegations of specific facts that could establish the requisite contacts with the District").

Our standard is stringent for good reason. Although we recognize that it is often difficult to plead conspiracy in specific, non-conclusory terms because rarely is there (especially before discovery) hard evidence of conspiratorial agreement between the defendants, *see Mandelkorn*, 359 F.Supp. at 696, we cannot allow plaintiffs to subvert the important constitutional principles of sovereignty and due process that underlie personal jurisdiction limitations with mere "unspecified and unsubstantiated claims" that multifarious defendants were part of a broad conspiracy and that one of them committed some tort in the plaintiffs' desired forum. *Hasenfus*, 700 F.Supp. at 62. Criminal investigations in particular inevitably involve concerted efforts to enforce the law, and sometimes one or more individuals involved in those efforts may commit a tort against the targets. We certainly cannot permit the targets, properly suing the perpetrators of the alleged tort, to drag everyone else involved in the investigation—every prosecutor, investigator, lawyer, and witness—into the forum where the alleged tort occurred simply by pleading their involvement in the investigation. *See* Althouse, *supra*, at 253 n. 113 ("The transactions underlying a claim based on conspiracy may be the conduct ... of law enforcement that will ulti-

---

**2.** We have also never examined the theory's due process limits, despite increasing concern by judges and commentators about its constitutionality. *See generally* Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 FORDHAM L.REV. 234, 255–56 (1983) (criticizing mechanical application of the theory without determin-

ing whether "*each* defendant, *through his own actions, purposefully availed* himself of the privilege of conducting activities in the forum state" (emphasis added)); Note, *The Long Arm and Multiple Defendants: The Conspiracy Theory of In Personam Jurisdiction*, 84 COLUM.L.REV. 506, 510, 521 (1984) (same).

mately be vindicated at trial.").[3] That is, apparently, what Edmond and Lyles have tried to do in this case.

I agree with my colleagues that Edmond and Lyles specifically alleged (in their complaint) an overt act in the District that caused injury in the District: their post-arrest incarceration and supposed mistreatment at the Postal Service Office by, as Lyles so colorfully put it at oral argument, "the postal inspectors from hell." I pay little heed, however, to appellants' bald and general allegation of "conspir[acy]" against "the defendants, and each of them," Complaint ¶ 4, or their prefacing of numerous allegations with "[i]n furtherance of said conspiracy," *e.g., id.* ¶¶ 7–11. On the other hand, as the majority points out, the Serian Affidavit does provide a specific and fairly concrete basis for believing that there was a conspiracy, involving Postal Inspector Green *et al.*, to procure a grand jury indictment unlawfully and to make an unlawful arrest based upon it, and the complaint adds specific allegations of numerous acts *directly relating* to that illegal plan by appellee Arnell. *See* Maj. Op. at 425–26. This is enough, I conclude—although with considerably more hesitation than my colleagues—at least to allow additional discovery as to personal jurisdiction over Arnell. I note, however, that the district judge is free to control that discovery closely, especially in light of Arnell's claims of official immunity (which may of course provide an alternative ground for dismissal on remand), and to grant a reinstituted motion to dismiss for lack of personal jurisdiction if that discovery does not reveal concrete evidence of Arnell's participation in an unlawful scheme. I also concur with the majority opinion regarding appellee Wolf, whose alleged actions, although related to the multi-front investigation of Edmond and Lyles, were not shown to be specifically connected to the indictment and subsequent arrest.

As for Popkin and Spitz, I might agree with my colleagues *if* we could properly consider the allegations in the Serian Affidavit against those two appellees. But I do not see how we can. The district court dismissed Spitz and Popkin from the case on April 6, 1988, and denied appellants' motion to reconsider that decision on September 30, 1988. Not until April 19, 1989—over six months later—did Edmond and Lyles submit the Serian Affidavit and move to rejoin Spitz and Popkin as "persons needed for a just adjudication." [4] The majority does not contend that the district court acted at all incorrectly when it issued its two 1988 orders but notes that the district court "had the authority" to reverse those orders and then concludes, without any explanation, that "its failure to do so was an abuse of discretion." Maj.Op. at 425. The motion to rejoin Spitz and Popkin, however, was apparently never even served on them,[5] *see* FED.R.CIV.P. 5(a), and thus was never acted on by the district court; it surely cannot be an abuse of discretion for the district court not to have reversed itself *sua sponte.* And even if Edmond and Lyles had properly requested the court to reconsider its earlier orders, I think it indisputable that they never made the convincing showing necessary to establish an abuse of discretion, because they provided no explanation at all for failing to obtain the Affidavit earlier. *See Segar v. Smith,* 738 F.2d 1249, 1285 (D.C.Cir.1984), *cert. denied,* 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985). Looking therefore only to the complaint, which constitutes the relevant record before the district court at the time of its 1988 orders, I find all of the allegations involving Spitz and Popkin to be like those regarding Wolf—connected solely to a vague and entirely speculative "con-

---

**3.** Our heightened pleading standard for damage actions against government officials, *see Martin v. Malhoyt,* 830 F.2d 237, 257 (D.C.Cir.1987), further supports this conclusion.

**4.** The district court did not finally dismiss Arnell for lack of jurisdiction until November 14, 1989, which is why the Serian Affidavit is properly part of the record regarding her.

**5.** The certificate of service indicates that the motion was served only on the federal appellees' attorney. The addresses of Spitz and of Popkin's attorneys were typed in but then whited out.

spiracy" encompassing all activities against appellants and not to the specific conspiracy involving Green (and perhaps Arnell) that included the alleged tort in the District.

## II.

Our opinion on the scope of the conspiracy theory under the D.C. long-arm statute can be corrected, if necessary, by the D.C. Court of Appeals. The precedent my colleagues set on the question of the scope of appellate review of summary judgments is, I believe, far more troubling, because it has direct and unfortunate implications for practice in the district courts. This conclusion follows from my understanding of the procedural history of this case.

The federal appellees moved for summary judgment on all issues in March 1989. Realizing that it was practically impossible to respond specifically to each of the more than 50 violations of the Constitution, federal statutes, and state law alleged in the 18 "cause[s] of action" in appellants' prolix complaint and amended complaint (as it was appellees' motion exceeded forty pages), appellees quite properly attempted to winnow the controversy down to a handful of basic legal theories and then to argue that, in regard to those theories, there were no genuine issues of material fact and they were entitled to judgment as a matter of law. This effort clearly satisfied appellees' burden under Rule 56. *See* FED. R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ("[A] party seeking summary judgment always bears the *initial* responsibility of informing the district court of the basis for its motion...." (emphasis added)).

The burden then shifted to Edmond and Lyles, who had at least three opportunities over the next nine months to explain to the district court why summary judgment was inappropriate—to isolate disputed factual issues or argue that the law was on their side regarding the legal theories on which the appellees focused *or any other legal theory. See* FED.R.CIV.P. 56(e). They accordingly filed a 38–page opposition to summary judgment, then a nine-page supplemental opposition, and finally a six-page motion to amend the summary judgment order.

I agree with the majority that appellants adequately presented their Perjurer's Liability and Sixth Amendment claims to the district court during this process. They also raised and preserved on appeal their theory that the postal inspectors' fingerprinting and photographing them during the stop in the District violated the Fourth Amendment—what I would call their "Unlawful Booking" claim.[6] The presentation was awkward, and the citations offered in support often unhelpful, but it is undeniable that the parties and the district court understood, or should have understood, the basis of the legal theories asserted, not because those theories were "surely an obvious reading of [the] case," Maj.Op. at 421, nor because they were "so plainly springing from [the] complaint," *id.* at 422, but because appellants' summary judgment memoranda repeatedly stated the relevant facts *and argued the relevant law.* I also agree with my colleagues that the district court erred in granting summary judgment on the Perjurer's Liability theory by deciding that as a matter of law a facially valid grand jury indictment cures any misconduct involved in procuring or acting upon

6. Appellants base this theory on cases such as *Davis v. Mississippi,* 394 U.S. 721, 727, 89 S.Ct. 1394, 1397–98, 22 L.Ed.2d 676 (1968), which held that detention without probable cause for the purpose of obtaining fingerprints can violate the Fourth Amendment. It is important to recognize that while appellants' various Fourth Amendment claims share a common antecedent (that is, lack of probable cause because of perjury), the consequent constitutional violations are clearly distinct: the arrest itself (Perjurer's Liability), the transportation to and delay in the District (Detour-and-Delay), and the booking activities (Unlawful Booking). The same would be true of other Fourth Amendment theories encompassed by the allegations in the complaint and related to the "manner in which [the] arrest was accomplished," Maj.Op. at 419 (emphasis omitted), such as an "Unreasonable Force" or a "Failure to Present a Warrant" argument. Under the majority opinion, I do not see why these additional claims could not be raised on remand.

it, a theory the district judge also evidently, but again erroneously, believed resolved the Unlawful Booking claim (which his opinion did not mention). Finally, I agree that the district court should not have summarily rejected appellants' Sixth Amendment claim, although I doubt that Edmond will be able to prove that the government's supposed "interference" with his attorney-client relationship with Lyles caused him any cognizable harm, even assuming it was unconstitutional and not covered by official immunity.

I part with my colleagues, however, on their conclusion that Edmond and Lyles properly raised the Detour-and-Delay Fourth Amendment claim below. To be sure, their *complaint* alleged *facts* necessary to state such a claim—facts admitted in part by the federal appellees—and incorporated them into a cause of action averring an unspecified Fourth Amendment violation. And, as the majority opinion indicates, those basic *facts* reappeared in appellants' opposition and supplemental opposition to summary judgment and various attachments thereto. But *nowhere* in those pleadings did appellants tie those facts even tangentially to a Detour-and-Delay *theory* of Fourth Amendment violation. The majority argues that Edmond and Lyles "pursued" the Detour-and-Delay "theor[y] of liability" before the district court, Maj.Op. at 419, but the only "pursuit" that the majority points to is the statement in appellants' opposition to summary judgment that Edmond and Lyles " 'were effectually kidnapped and taken from the State of Maryland into the District of Columbia' " for the improper purpose of obtaining their fingerprints and mug shots. *Id.* at 421 (quoting Opposition to Dismissal at 16). That statement, however, came in the context of explaining " '[t]he injury which [appellants] sustained as a result of defendants' wrongful conduct,' " *id.*—and the only theories of "wrongful conduct" alleged were Perjurer's Liability and Unlawful Booking.

If we had before us a grant of a motion for dismissal under FED.R.CIV.P. 12(b)(6), we would have a duty to examine appellants' complaint independently to determine if the factual allegations therein could provide for relief under *any* viable legal theory, even one not mentioned therein. *See, e.g., Wells v. United States,* 851 F.2d 1471, 1473 (D.C.Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989); 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 336–37 (2d ed. 1990) [hereinafter WRIGHT & MILLER]. Thus, if the district court had granted the federal appellees' May 1988 motion for dismissal *in toto*, we would be entirely justified in considering arguments that appellants briefed for the first time on appeal—or indeed in rooting through the complaint ourselves in search of some valid legal theory.

But we are not in this posture because the district court properly looked to the complaint and in its September 1988 order declined to dismiss "the numerous claims by [appellant] arising directly under the Constitution." Instead, we are reviewing the district court's decision on the federal appellees' March 1989 motion, which was titled a "Motion to Dismiss or, in the Alternative[,] for Summary Judgment," but which, once affidavits and other "matters outside the pleadings" were allowed into the record, was converted into (and was treated by the district judge as) a pure Rule 56 motion for summary judgment. *See* FED.R.CIV.P. 12(b).

Our review is, accordingly, strictly limited to the issues and legal theories that were presented to the trial court *in the summary judgment pleadings* (and then preserved on appeal). A party may not resurrect on appeal a theory encompassed by its complaint but unmentioned and thus evidently abandoned during the summary judgment stage of the proceedings.[7] *See Savers Fed. Savings & Loan Ass'n v. Reetz,* 888 F.2d 1497, 1501 (5th Cir.1989); *Kensington Rock Island Ltd. Partnership v. American Eagle Historic Partners,* 921

---

**7.** A party may, however, raise a legal argument in its summary judgment pleadings that was not included in its complaint; the pleading is treated as initiating an amendment of the complaint. *See National Wildlife Fed'n v. Costle,* 629 F.2d 118, 133 n. 45 (D.C.Cir.1980).

F.2d 122, 125 (7th Cir.1990) (" '[A] party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal.' " (quoting *Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir.1983)); *see also* 10 Wright & Miller, *supra*, § 2716, at 650–54 ("[On appeal t]he parties cannot add exhibits, depositions, or affidavits to support their position *nor can they advance new legal theories or raise new issues in order to secure a reversal of the lower court's [summary judgment] determination.*" (emphasis added) (footnotes omitted)); *Kriegesmann v. Barry–Wehmiller Co.*, 739 F.2d 357, 358 (8th Cir.) (per curiam) ("Appellant did not present this theory to the trial court, and we will not consider it for the first time on appeal."), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984).

In a case in which the appellant attempted to raise a Fourth Amendment theory not presented in his opposition to summary judgment below, we explained the fundamental policies on which this rule is founded:

> Clearly, oral argument on appeal is not the proper time to advance new arguments or legal theories in opposition to a motion for summary judgment [citing Wright & Miller, *supra* ]. Appellant did not articulate this argument before the District Court, let alone present evidence to support it. Understandably, then, the District Court never addressed the argument in disposing of the motion for sum-

mary judgment.... [E]ven if we found ourselves in agreement with appellant, to reverse the District Court[ ] ... on the basis of a new argument ... would undeniably undermine the integrity of the adversarial process and the authority of the District Court to fairly and effectively control the litigation before it. We decline to do so.

*Tarpley v. Greene*, 684 F.2d 1, 7 n. 17 (D.C.Cir.1982) (Edwards, J.); [8] *see also Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1537 & n. 160 (D.C.Cir.1984) (en banc) ("Ordinarily, in reviewing motions for summary judgment, the appellate court considers only those matters presented to the district court, disregarding additional allegations raised for the first time on appeal." (citing *Tarpley* )), *vacated on other grounds*, 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985).[9]

The majority opinion relies on " 'the general rule ... that a federal appellate court does not consider an issue not passed on below.' " Maj.Op. at 420 (quoting *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976)). It contends that "the District Court never even purported to address" the Perjurer's Liability and the Detour-and-Delay claims, so "it cannot be asserted that the trial court somehow granted 'summary judgment' against appellants on the substance of those theories," and so, the argument goes, we cannot affirm the summary judgment. *Id.* at 420; *see also id.* at 421–22. My colleagues, however, stand the *Singleton* principle on its head. In truth the district court's order resolved the *entire case* (with the single exception of a statutory claim

---

8. The majority contends that *Tarpley* limits appellate review only of " 'theor[ies] vaguely raised for the first time at oral argument.' " Maj.Op. at 422 n. 13 (quoting *Tarpley*, 684 F.2d at 7 n. 17). But while the appellant's position in *Tarpley* was more egregious than that of appellants in this case—who at least raised the Detour-and-Delay theory in their appellate briefs—there is absolutely nothing in *Tarpley* that indicates its holding and policy concerns are limited to the "oral argument" situation (for which citation to Fed.R.App.P. 28 and cases on waiver through failure to brief would have sufficed) rather than extending to all cases in which "new arguments or legal theories" were not "articulate[d] ... before the District Court."

9. Our divided panel opinion in *Semaan v. Mumford*, 335 F.2d 704, 706 & n. 7 (D.C.Cir.1964), has been superseded by *Tarpley* and similar cases, as well as by recent Supreme Court decisions regarding summary judgment, *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (explaining that summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules [of Civil Procedure]"). *Semaan* applied a standard essentially equivalent to that properly used in reviewing a dismissal. *See supra* page 420.

against Green), granting summary judgment on "*all* the constitutional tort claims," Maj.Op. at 418 (emphasis added); *see also Edmond v. USPS*, 727 F.Supp. 7, 12 (D.D.C.1989) (*Mem.Op.*). The only real question, then, is whether the court was *required* to address with specificity the particular theories appellants raise before us. *Singleton*, like *Tarpley*, is designed to spare district courts from the needless chore of addressing and resolving every issue potentially involved in a case—even those not raised by the litigants—before we can *affirm* the dismissal of the entire case; under any other rule, complicated cases might never conclude. Thus, *Singleton* simply warns us not to reach out to *reverse* a district court on a ground that it had no obligation to engage. Unfortunately, that is precisely what the majority does here on appellants' Detour-and-Delay claim.

The district judge did "totally ignore[ ]" that claim in his orders granting summary judgment and refusing to amend that judgment. *Id.* at 419. But he did so, I believe, for good reason; he did not, as my colleagues contend, "incorrectly characterize" appellants' case. *Id.* at 422. Instead of picking through the complaint to address whatever *he* felt were meritorious issues, he relied, quite properly, on the *adversaries* to bring some order to this confused controversy in their summary judgment pleadings by presenting the facts and law that remained in dispute. Indeed, his opinion expressly relied on (and cited) appellants' opposition memoranda to organize the legal theories remaining in the case. *See Mem.Op.* at 10 & nn. 8–11. Edmond and Lyles simply failed to fulfill their obligation as litigants—even on their third try, in their motion to amend judgment, *after* they had seen exactly how the court addressed their claims. *But cf. Savers Federal*, 888 F.2d at 1501 (plaintiffs who fail to present legal theory in opposition to summary judgment cannot "save the day" by reviving the theory in a motion to reconsider).

We cannot reasonably expect, nor does any precedent require, district judges to comb through the complaint, the remainder of the record, and the multitude of facts and potential violations of law that are alleged therein in search of a legal theory or a genuine factual dispute by which plaintiffs can avoid summary judgment. It is quite unfair to ask them to resolve every single legal theory mentioned by any party at any point in the litigation prior to the summary judgment pleadings. In short, we cannot reverse the district court on a ground never properly presented to it by the adversaries despite their ample opportunities to do so.

That is not all. My colleagues unfortunately go even further in resurrecting appellants' case. Not only do they allow Edmond and Lyles to raise on appeal the Detour-and-Delay Fourth Amendment claim that was never adequately articulated before the district court (but was at least fleshed out in appellants' briefs on appeal), they decide to offer some unsolicited (though obviously valuable) legal advice, recommending that appellants restyle their claim as a *Fifth Amendment* violation (a provision never mentioned in Edmond and Lyles' appellate briefs). The district court is then told it must address that *entirely* new theory on remand. *See* Maj. Op. at 423 & n. 16. Given the gratuitous assistance provided by this court, do appellants need the additional counsel [10] that the majority recommends?

Because it "undeniably undermine[s] the integrity of the adversarial process and the authority of the District Court to fairly and effectively control the litigation before it," *Tarpley*, 684 F.2d at 7 n. 17, I dissent from the Detour-and-Delay portion of the majority opinion.

---

**10.** Lyles is, I note, a member of the D.C. Bar   and the D.C. District Court Bar.